# Exhibit 34

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NOT AN LLC d/b/a/ JSD SUPPLY,

Plaintiff,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; and GARY M. RESTAINO AS THE ACTING DIRECTOR OF ATF,

Defendants.

Case No. 2:22-cv-00747-WSS

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

On Friday, May 20, 2022, three hours after this Court issued its Order setting a briefing schedule and a hearing on Plaintiff's motion (ECF #9), ATF seems to have experienced a crisis of confidence. The agency emailed a letter to Plaintiff's counsel in an apparent effort to moot the case and thereby prevent a ruling from this Court. Exhibit 1. Without any explanation, the first sentence of that letter states that "[t]he cease-and-desist letter dated May 9, 2022, and issued to your client, JSD Supply, is hereby rescinded." *Id.* However, the second paragraph of ATF's letter undercuts that claimed withdrawal, reasserting the basis for the agency's prior letter:

> Please be aware that the [ATF's] longstanding position that firearm kits that are designed to or may readily be converted to, expel a projectile by the action of an explosive are firearms as defined by the Gun Control Act, 18 U.S.C. § 921(a)(3)(A), remains in effect. *See In the Matter of the Search of Polymer 80, Inc.*, 3:20-mj-123 WGL (D. Nev. Dec. 9, 2020). Any questions about whether any particular product or products would be considered a "firearm" for purposes of the GCA and its implementing regulations may be submitted to ATF for classification.[1]

In other words, what the agency seemingly gives in its one-sentence recission, it takes back in the next paragraph, reasserting the legal position underscoring its C&D Order, and thereby implicitly (if not explicitly) threatening Plaintiff's continued operations on same basis as before. Falling far short of walking back the agency's flawed legal positions announced in the C&D Order,

[1] The suggestion that Plaintiff submit "any particular product or products" to ATF for classification is disingenuous. First, at the Orchid Advisors "Firearms Industry Conference" held in Atlanta in April of 2022, ATF Associate Chief Counsel James P. Vann reported that *ATF is not issuing any classification letters* with respect to what constitutes a "firearm," until the Final Rule (2021R-05F) goes into effect. Second, ATF's Final Rule proposes to codify into regulation the agency's existing classification system, wherein "[t]he Director ***may*** issue a determination," but need not in fact do so. 87 FR at 24748 (emphasis added). Third, ATF's 2021 average processing time for requests was upwards of nine months – long after the Final Rule would go into effect. *See* Exhibit 2. Fourth, for Plaintiff's previously submitted requests, the agency's response time has been *years* – not weeks or months. Fifth, for other products Plaintiff submitted to ATF for classification, the agency *never* responded. *See* Exhibit 3 (JSD Supply product submission, dated August 16, 2019, ATF control No. 311-764). Sixth, there should be absolutely no need for Plaintiff to submit *unregulated* firearm parts to the ATF in order to receive confirmation, through a process reminiscent of Rube Goldberg, that Plaintiff may sell them.

ATF's Friday letter *reiterates that the agency continues to hold to those positions*,[2] and reserves its flexibility to enforce that (ever-changing) position against Plaintiff. That is not a rescission of the agency threat on which Plaintiff could reasonably rely to reopen its doors.

What is more, after filing of this matter, it was learned that ATF had served *another* cease-and-desist order on *another* retailer of unregulated gun parts and 80% frames and receivers in Missouri. *See* Exhibit 4. ATF's letter to KM Tactical advances *identical* positions, using *identical* language, and makes *identical* threats as ATF's purportedly-rescinded C&D Order to Plaintiff.[3] Thus, ATF continues to press its new (and flawed) policy on 80% frames and receivers and firearm parts.[4] Defendants cannot credibly claim that the threat to Plaintiff is over, when every indication is that ATF is moving ahead with the premature enforcement of its new policy. Thus, Plaintiff's business operations remain shut down, and Plaintiff continues to suffer serious irreparable harm.

Having now been aggressively challenged by Plaintiff in this Court as to the reasonableness and legality of its C&D Order, ATF seeks to evade judicial review while preserving its enforcement options. In other words, ATF now seeks to place its secret policy back into its "desk drawer … immune from any evaluation by the judiciary," and quietly sweep the whole matter

---

[2] *See* Defendants' Opposition Brief, ECF #17 at 1 (accusing Plaintiff of being "an unlicensed seller of weapons parts kits and other firearms-related products") and at 5 (suggesting Plaintiff "obtain[] a Federal Firearms License" and "submit the products that it sells for classification").

[3] First, the KM Tactical letter states that "ATF is aware that KM Tactical is selling and transferring all the components necessary to produce a fully functional firearm to a single customer in one or multiple transactions." *Compare id*. at 1 with Compl. Exhibit 1 at 1. Second, the letter states that "selling the necessary components to produce a functional firearm to the same person through multiple purchases or structured transactions at different times, instead of through a complete kit, is equivalent to selling the complete kit to the customer." *Compare id*. at 2 with Compl. Exhibit 1 at 1. Third, the letter orders KM Tactical to "[c]ease and desist all sales, structured or otherwise, of all the necessary components to produce a functional firearm to a single customer." *Compare id*. at 2 with Compl. Exhibit 1 at 2.

[4] Indeed, even if no C&D Order had ever been issued to Plaintiff, ATF's cease and desist order to KM Tactical *by itself* supports the reasonableness of Plaintiff's fear of aggressive ATF enforcement actions against Plaintiff.

under the rug. *See United States v. Pulungan*, 569 F.3d 326, 328 (7th Cir. 2009). But even if ATF had not repeated its threat against Plaintiff in the second paragraph of its letter, this matter would not be mooted, because the agency could simply resume enforcement against Plaintiff at any time.

Agencies must not be allowed to threaten enforcement action, only to strategically withdraw that threat when fearing judicial review. As the Third Circuit explains, "we are reluctant to declare a case moot … because of some action [a defendant] took unilaterally after the litigation began. This situation is often called '[v]oluntary cessation,' and it 'will moot a case only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."'" *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020) (noting a defendant has a "heavy burden of persua[ding] a court that a case is moot"). The focus "is on whether the defendant made that change unilaterally and so may 'return to [its] old ways' later on." *Id.* at 307. Here, rather than it being "absolutely clear" that the challenged action will *not* reoccur, every indication is that ATF intends to continue pursuing its wrongful interpretation of the law. First, ATF's Friday letter threatens Plaintiff on the same basis as the C&D Order. Second, ATF has issued a nearly identical cease-and-desist to KM Tactical. Third, ATF's Final Rule which takes effect in August promulgates the same policy change through the formal rulemaking process.

Indeed, it is clear that ATF's Friday letter was not issued during some moment of clarity by the agency, but rather represents a thinly veiled maneuver to avoid judicial review of the agency's dirty laundry, aired in Plaintiff's filings. The government cannot threaten law-abiding businesses with civil or criminal enforcement, cause significant economic harm and commit constitutional violations in the process and then, like a bully who encounters unexpected opposition, sidestep the issue and move on to a weaker target less able to protect itself.

Just last year, the Supreme Court addressed a similar scenario in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021), where "officials changed the challenged policy shortly after this application was filed…." *Id*. at 1297. Unpersuaded by the charade to avoid review, the Court concluded that:

> even if the government withdraws or modifies a … restriction in the course of litigation, that does not necessarily moot the case. And so long as a case is not moot, litigants otherwise entitled to emergency injunctive relief remain entitled to such relief where the applicants 'remain under a constant threat' that government officials will use their power to reinstate the challenged restrictions. … officials with a track record of 'moving the goalposts' retain authority to reinstate those heightened restrictions at any time." [*Id.*]

In fact, ATF's position here is even less persuasive than California's. Short of "withdrawing" its position, the agency continues to adhere to the same flawed view of the law that gave rise to the C&D Order, continuing to disapprove of and threaten Plaintiff's business operations on that basis

Additionally, a case is not moot if it is capable of repetition yet evading review, where "'(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). With ATF continuing to threaten Plaintiff, and announcing that its legal position has not changed, this case falls squarely within the doctrine. First, within 24 hours of Plaintiff filing suit, ATF sought to moot the case while preserving its options for future enforcement action. There is simply no way to ever "fully litigate[]" such a matter, when an agency bobs and weaves, minute-by-minute, to avoid judicial review. Second, it is evident that ATF (i) has not actually backed down as to its position, (ii) continues to threaten Plaintiff, (iii) issued a nearly identical letter to another company, and (iv) promulgated the Final Rule to take effect in August. Should Plaintiff once again begin business activities, it is evident that Plaintiff will again be subjected to the agency's new, lawless campaign against unregulated 80% frames and receivers and firearm parts.

Alternatively, even if ATF had never issued the original C&D Order, an active controversy exists between the parties by Defendants' imposition of a wrongful and entirely novel interpretation of the law, well in advance of the Final Rule's August implementation. In this case, Plaintiff challenged *not only* the ATF's C&D Order that was issued and then nominally rescinded, *but also* Defendants' underlying interpretation of the law. Plaintiff's Complaint seeks both declaratory and injunctive relief from that erroneous legal position. Indeed, because Plaintiff has alleged an infringement of protected Second Amendment activity, it need not await an actual arrest in order for this court to issue relief. As the Supreme Court has previously explained, actual enforcement is not always needed to challenge an unconstitutional action: "a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'" *Steffel v. Thompson*, 415 U.S., 452, 459 (1974). In other words, "Damocles's sword does not have to actually fall … before the court will issue an injunction." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

Finally, judicial review remains appropriate even assuming a specific agency action has been mooted, when a "plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well, and the plaintiff has standing to challenge the future implementation of that policy…." *City of Houston v. Department of Hous. & Urban Dev.*, 24 F.3d. 1421 (D.C. Cir. 1994). Thus, to the extent ATF seeks to avoid this Court's review of its C&D Order to Plaintiff, this Court should construe that as an invitation by the agency to examine (and strike down) the *identical* substance of the agency's Final Rule, which will cause *identical* (and indeed permanent) irreparable harm to Plaintiff's business operations (and constitutional rights) in three months' time. *See* Opposition Brief at 14, 16.

Respectfully submitted,

Dated: May 24, 2022

By: /s/ David J. Berardinelli
David J. Berardinelli
DEFOREST KOSCELNIK & BERARDINELLI
436 Seventh Ave., 30th Fl.
Pittsburgh, PA 15219
T: 412-227-3100
F: 412-227-3130
Email: berardinelli@deforestlawfirm.com

Robert J. Olson*
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
T: (703) 356-5070
T: (540) 450-8777
F: (703) 356-5085
Email : wjo@mindspring.com
**Admitted Pro Hac Vice*

Stephen D. Stamboulieh*
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
Email: stephen@sdslaw.us
MS Bar No. 102784
**Admitted Pro Hac Vice*



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Philadelphia Field Division*

*601 Walnut Street, Suite 1000E*
*Philadelphia, PA 19106*
www.atf.gov

May 20, 2022

**VIA E-MAIL TRANSMISSION**
WILLIAM J. OLSON, P.C.
E-MAIL: wjo@mindspring.com
http://www.lawandfreedom.com

William J. Olson, P.C.
Attorneys at Law
370 Maple Avenue West, Suite 4
Vienna, Virginia 22180-5615

Dear Mr. Olson:

The cease-and-desist letter dated May 9, 2022, and issued to your client, JSD Supply, is hereby rescinded.

Please be aware that the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF's) longstanding position that firearm kits that are designed to or may readily be converted to, expel a projectile by the action of an explosive are firearms as defined by the Gun Control Act, 18 U.S.C. § 921(a)(3)(A), remains in effect. *See In the Matter of the Search of Polymer 80, Inc*., 3:20-mj-123 WGL (D. Nev. Dec. 9, 2020). Any questions about whether any particular product or products would be considered a "firearm" for purposes of the GCA and its implementing regulations may be submitted to ATF for classification.

Sincerely,

Mathew P. Varisco
Special Agent in Charge

cc: JSD Supply
1052 New Castle Road,
Prospect, Pennsylvania 16052



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Firearms Technology Industry Services Branch*

---

*Martinsburg, WV*

www.atf.gov



907010:(b) (6)
3311/303670

The Honorable Raúl R. Labrador
U.S. Congressman
Attention(b) (6)
33 East Broadway, Suite 251
Meridian, ID 83642

Dear Congressman Labrador:

This is in response to your fax to the Bureau of Alcohol, Tobacco, Firearms and Explosives dated May 8, 2015, sent on behalf of your constituent,(b) (6) requested your assistance regarding the status of a specialized large (.550 caliber) empty cartridge case and a rifle chambered for this cartridge that he shipped to the Firearms Technology Industry Services Branch (FTISB) for evaluation on January 26, 2015.

For background, FTISB initially received correspondence (dated April 29, 2014) on May 2, 2014 fron(b) (6) requesting whether the .550 Magnum Jamison caliber cartridge, or similar designation, had been previously classified by ATF. FTISB mailed a letter of response on June 24, 2014 (please see attachment), stating that .550 Magnum cartridges constituted "ammunition" as defined in the amended Gun Control Act of 1968 (GCA), 18 U.S.C. § 921(a)(17)(a). Further, it was noted that the classification provided was relevant only to the described ammunition and not to any particular firearm. FTISB would have to examine a firearm chambered for these cartridges in order to establish whether or not it is particularly suitable for sporting purposes.

On January 28, 2015, FTISB receive(b) (6) rifle for examination chambered for the cartridge to be considered for classification as "generally recognized as particularly suitable for sporting purposes" as defined in the National Firearms Act (NFA), 26 U.S.C. § 5845(f). The classification was for the cartridge, of which an empty case was included, to be approved as the "Jamison 550 Magnum" cartridge.

The submitted items were assigned to a FTISB Firearms Enforcement Officer (FEO) for a complete formal evaluation. Although FTISB strives to maintain a customer service response time of within 90 days, we also adhere to the First In, First Out (FIFO) method for organizing,

handling, and prioritizing our FEO's workloads to ensure fair and equal treatment of all of our customers. The only exception to this being criminal cases, which always takes the highest priority. Unfortunately, we are unable to provide an estimated date of completion at this time, but the assigned FEO is working diligently towards (b) (6) evaluation and will then be able to provide a determination letter specific to the items submitted.

We thank you for your correspondence and trust the foregoing will be responsive to your constituent's concerns. Please let me know if FTISB can be of any further assistance.

Sincerely yours,




Acting Chief, Firearms Technology Industry Services Branch

Attachment: FTISB letter of response to (b) (6) dated June 24, 2014.

08-13-19

(b)(6)
JSD Supply
info@jsdsupply.com
(b)(6)
106 Poplar Lane
Portersville Pa 16051

EVAL.
311-764

Director
Bureau of Alcohol, Tobacco, Firearms and Explosives
244 Needy Road
Martinsburg WV 25405
Attention: Firearms and Explosives Imports Branch




Director,

Attached is my application for 2 "80%" Pre Cursor Non Firearm Receivers. The larger black plastic frame is a right side plate of a CZ Scorpion Evo. The right side plate is what is considered the firearm and is serialized on a store bought firearm.

It lacks the following:

1) Lacks Mounting Holes – The holes that are absent allow both the left side plate and right side plate to mount together and hold the bolt and other fire control components.

2) Lacks Barrel Retainer – The front of the side plate has a retainer designed to hold the barrel in place

The smaller steel receiver is an "80%" Pre Cursor Non Firearm for a Sig Sauer P365. Attached is the non firearm determination by the Technology branch, as well as the approval for a form 6 for importation for Sig Sauer and INDO-MIM.

TWO Receivers/side

This receiver lacks the following:

1) Lacks Sear Pin Hole
2) Lacks Trigger Pin Hole
3) Lacks Slide Rails

I am wanting to import these non firearm receivers into the USA (b) (4) (b) (4) I am requesting approval before selecting a manufacturer for production.

Thank you





**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives
Kansas City Field Division

2

www.atf.gov

May 18, 2022

Mr. Kyle Murphy
d/b/a KM Tactical
6 SW Industrial Drive
Lee's Summit, MO 64081

RE: Warning Notice on Possessing/Manufacturing/Transferring Privately Manufactured Firearms in Violation of Federal Law

Mr. Murphy:

This letter concerns the products sold by your company, KM Tactical, which are generally described on your website, www.kmtactical.net, as "Polymer 80 Frames." The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is aware that KM Tactical is selling and transferring all the components necessary to produce a fully functional firearm to a single customer in one or multiple transactions.

ATF is conducting a criminal investigation into these sales. Any information that you have regarding these sales including, but not limited to, sales records, product order lists, shipping records, etc., could be considered evidence in this investigation and destruction or disposal of this evidence could be viewed as obstruction of justice in violation of Federal law.

In or around January 2022, ATF purchased a sample kit from your website (www.kmtactical.net) labeled "Polymer80 PF940V2." The ATF Firearms and Ammunition Technology Division (FATD) examined the sample kit and classified it as a firearm under Federal law.[1] The Gun Control Act of 1968, in relevant part, defines the term "firearm" as "any weapon…which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive…[or]…the frame or receiver of any such weapon." 18 U.S.C. § 921(a)(3). ATF has held that kits which include all components necessary to produce a functional firearm, including the jig or template used to finish the unfinished frame or receiver, the slide assembly, and the necessary

[1] ATF is authorized to investigate, administer, and enforce the Federal firearms laws. *See* 28 U.S.C. § 599A; 28 C.F.R. § 0.130. In turn, the Director of ATF has delegated the authority to classify firearms to the FATD.

components to complete the frame or receiver are themselves properly classified as "firearms" under the GCA. Specifically, these kits are a weapon that may readily be converted to expel a projectile by the action of an explosive.[2]

Moreover, from a review of the other three kits listed for sale at https://kmtactical.net/product-category/default-category/other-platforms/glock/polymer-80-frames/, it appears that they also are classified as firearms under Federal law. As such, all four kits are subject to GCA requirements.

Accordingly, persons engaged in the business of selling these complete kits are in fact engaged in the business of dealing firearms. Further, selling the necessary components to produce a functional firearm to the same person through multiple purchases or structured transactions at different times, instead of through a complete kit, is the equivalent to selling the complete kit to the customer. These sales circumvent the requirements of the GCA and are unlawful.

To lawfully engage in the business of dealing firearms, a person must first obtain a Federal firearms license (FFL). 18 U.S.C. § 923(a). KM Tactical does not currently possess, nor was ever issued, a FFL that would authorize KM Tactical to engage in the business of dealing firearms. KM Tactical does not maintain records as required by the GCA, nor do customers of KM Tactical undergo a National Instant Criminal Background Check System (NICS) background check. Therefore, KM Tactical must take the following actions:

> **Cease and desist all sales, structured or otherwise, of all the necessary components to produce a functional firearm to a single customer.**

For public safety reasons, your cooperation in this matter is essential.

Please direct any questions or concerns about technical matters to the Firearms and Ammunition Technology Division, who can be reached at (304)-616-4300. For future reference, know that upon request the FATD will review manufacturing plans and prototypes to determine whether items are firearms pursuant to the GCA.

---

[2] For your reference, on April 11, 2022, ATF submitted ATF final rule 2021R-05F, **Definition of "frame or receiver" and Identification of Firearms.** This rule reiterates ATF's current analysis on the "Polymer80 PFT40V2" and provides that the definition of firearms includes, in relevant part, "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 87 Fed. Reg. 24652, 24735.

If you have any questions concerning the non-compliant items or to otherwise coordinate compliance with this letter, please contact ATF Group Supervisor Gordon Mallory of the Kansas City Field Division.

Respectfully,

Frederic D. Winston
Special Agent in Charge
Kansas City Field Division

2024987200