## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

DIVISION 80 LLC,

     Plaintiff,

     v.

MERRICK GARLAND, in his official
capacity as Attorney General of the
United States *et al.*,

     Defendants.

Case No. 3:22-cv-00148

District Judge Jeffrey V. Brown

## DEFENDANTS' COMBINED CROSS-MOTION FOR SUMMARY JUDGMENT AND BRIEF IN OPPOSITION TO DIVISION 80 LLC'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................3

I.      Statutory Background ............................................................................3

II.     Regulatory Background ..........................................................................4

III.    The Rule ..................................................................................................6

        A.      Definition of "Firearm"...............................................................6

        B.      Definition of "Frame or Receiver" .............................................7

        C.      Definition of "Privately Made Firearm" ...................................9

IV.     The Present Case ..................................................................................10

LEGAL STANDARDS ................................................................................................10

ARGUMENT ................................................................................................................11

I.      Division 80 Has Not Established Article III Standing. ..................11

II.     The Rule Is Consistent with ATF's Regulatory Authority. ...........13

        A.      The Amended Definition of "Firearm" ...................................14

        B.      The Amended Definition of "Frame or Receiver"..................16

        C.      The Rule Reflects the Best Interpretation of the Relevant Statutory Terms. .........................................................................18

III.    The Rule Is Consistent with the Constitution. ................................24

        A.      The Rule Is Consistent with the Second Amendment, and Division 80 Does Not Adequately Develop Any Argument to the Contrary.....................24

        B.      The Rule Is Consistent with the First Amendment...............26

        C.      The Definitions Contained in the Rule Are Not Otherwise Unconstitutional. ........................................................................30

1.      The Rule Is Not Unconstitutionally Vague. ...............................................30

2.      The Rule Is Consistent with All Other Constitutional Provisions
        Raised by Division 80. ...............................................37

IV.     The Rule Complies With the APA. ...................................................................42

        A.      The Rule Is a Logical Outgrowth of the Notice. ...................................42

        B.      The Rule Is Not Arbitrary and Capricious...........................................49

V.      Any Relief Ordered Should Be Appropriately Limited. ...................................54

        A.      Any Relief Should Be Narrowly Tailored. ...........................................54

                1.      Section 706(2) Does Not Authorize the Universal Vacatur
                        Urged by Division 80. ...............................................54

                2.      In Any Event, Remand Without Vacatur Is the Appropriate
                        Remedy for Any Procedural Violation...........................................56

        B.      In the Alternative, Any Vacatur of the Rule Should Be Narrowly
                Tailored...........................................................................................58

CONCLUSION .............................................................................................................59

## TABLE OF AUTHORITIES

**CASES**

*10 Ring Precision, Inc. v. Jones,*
   722 F.3d 711 (5th Cir. 2013) ................................................................................. 11, 49

*A.L.A. Schechter Poultry Corp. v. United States,*
   295 U.S. 495 (1935) ................................................................................................. 40

*Abramski v. United States,*
   573 U.S. 169 (2014) ................................................................................................. 21

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
   988 F.2d 146 (D.C. Cir. 1993) ................................................................................. 57

*Am. Acad. of Implant Dentistry v. Parker,*
   860 F.3d 300 (5th Cir. 2017) ................................................................................... 27

*Am. Coke & Coal Chems. Inst. v. EPA,*
   452 F.3d 930 (D.C. Cir. 2006) ................................................................................. 48

*Am. Trucking Ass'n v. Atchison, Topeka, and Santa Fe Ry. Co.,*
   387 U.S. 397 (1967) ................................................................................................. 14

*Amin v. Mayorkas,*
   24 F.4th 383 (5th Cir. 2022) .................................................................................... 49

*Anderson v. Williams,*
   No. 10-1916, 2011 WL 2580665 (D. Nev. June 27, 2011) ...................................... 32

*Arcara v. Cloud Books, Inc.,*
   478 U.S. 697 (1986) ................................................................................................. 28

*Ariz. Pub. Serv. Co. v. EPA,*
   211 F.3d 1280 (D.C. Cir. 2000) ........................................................................ 45, 48

*Arizona v. Biden,*
   31 F.4th 469 (6th Cir. 2022) .................................................................................... 56

*Attala Cnty., Miss. Branch of NAACP v. Evans,*
   37 F.4th 1038 (5th Cir. 2022) .................................................................................. 11

*Audler v. CBC Innovis Inc.*,
   519 F.3d 239 (5th Cir. 2008)..................................................................25

*Avoyelles Sportsmen's League, Inc. v. Marsh*,
   715 F.2d 897 (5th Cir. 1983)..................................................................57

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979)..............................................................................27

*Bacon v. NCO Fin. Sys., Inc.*,
   No. 12-646, 2012 WL 1899978 (N.D. Tex. Apr. 23, 2012) ....................41

*Baylor Cnty. Hosp. Dist. v. Price*,
   850 F.3d 257 (5th Cir. 2017)..................................................................24

*Becerra v. Empire Health Found.*,
   142 S. Ct. 2354 (2022) ..........................................................................23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................41

*Boyce Motor Lines v. United States*,
   342 U.S. 337 (1952)..............................................................................34

*California v. Texas*,
   141 S. Ct. 2104 (2021) ..........................................................................56

*Cargill v. Garland*,
   57 F.4th 447 (5th Cir. 2023) ..................................................................23

*Central and South West Servs., Inc. v. EPA*,
   220 F.3d 683 (5th Cir. 2000)..................................................................57

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
   447 U.S. 557 (1980)........................................................................27, 29

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council*,
   467 U.S. 837 (1984)..............................................................................23

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
   142 S. Ct. 1464 (2022) ..........................................................................28

*City of Stoughton v. EPA*,
   858 F.2d 747 (D.C. Cir. 1988)...............................................................47

*City of Waukesha v. EPA*,
   320 F.3d 228 (D.C. Cir. 2003) ..............................................................................48

*ConocoPhillips Co. v. EPA*,
   612 F.3d 822 (5th Cir. 2010)................................................................................42

*Cox v. Louisiana*,
   379 U.S. 559 (1965).............................................................................................34

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008).............................................................................................37

*Delta Found., Inc. v. United States*,
   303 F.3d 551 (5th Cir. 2002)................................................................................11

*District of Columbia v. Heller*,
   554 U.S. 570 (2008).............................................................................................25

*Division 80 v. Garland*,
   No. 3:22-cv-148, 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022)........................35

*E.T. v. Paxton*,
   41 F.4th 709 (5th Cir. 2022) ................................................................................11

*Edelman v. Lynchburg Coll.*,
   535 U.S. 106 (2002).............................................................................................23

*El Paso Cnty., Texas v. Trump*,
   982 F.3d 332 (5th Cir. 2020)................................................................................11

*Erie R. Co. v. Tompkins*,
   304 U.S. 64 (1938)...............................................................................................55

*Escamilla v. United States*,
   __ F.4th __, No. 22-2208, 2023 WL 2423342 (7th Cir. Mar. 9, 2023) ...............24

*Federal Power Commission v. Hope Natural Gas Co.*,
   320 U.S. 591 (1944).............................................................................................40

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010).............................................................................................58

v

*Gonzales v. Raich*,
  545 U.S. 1 (2005) ................................................................................................41

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ...........................................................................................34

*Gulf Restoration Network. v. U.S. Dep't of Transp.*,
  452 F.3d 362 (5th Cir. 2006) .............................................................................19

*Gundy v. United States*,
  139 S. Ct. 2116 (2019) .......................................................................................39

*Handley v. Chapman*,
  587 F.3d 273 (5th Cir. 2009) .............................................................................51

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944) ...........................................................................................56

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ...........................................................................................11

*Hollis v. Lynch*,
  121 F. Supp. 3d 617 (N.D. Tex. 2015) ..............................................................41

*Home Bldg. & Loan Ass'n v. Blaisdell*,
  290 U.S. 398 (1934) ...........................................................................................55

*Horne v. Department of Agriculture*,
  576 U.S. 350 (2015) ...........................................................................................37

*Huawei Techs. USA v. FCC*,
  2 F.4th 421 (5th Cir. 2021) ..........................................................................42, 48

*Huddleston v. United States*,
  415 U.S. 814 (1974) ...........................................................................................21

*In re Franchise Servs. of N. Am., Inc.*,
  891 F.3d 198 (5th Cir. 2018) .............................................................................53

*Inclusive Communities Project, Inc. v. Dep't of Treasury*,
  946 F.3d 649 (5th Cir. 2019) .............................................................................11

*Innovator Enters., Inc. v. Jones*,
  28 F. Supp. 3d 14 (D.D.C. 2014) .......................................................................20

*Kam-Almaz v. United States,*
   682 F.3d 1364 (Fed. Cir. 2012)...................................................................39

*Long Island Care at Home v. Coke,*
   551 U.S. 158 (2007)........................................................................... 46, 47

*Lucas v. S.C. Coastal Council,*
   505 U.S. 1003 (1992) ...............................................................................38

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)..................................................................................11

*Magee v. City of S. Padre Island,*
   463 F. App'x 377 (5th Cir. 2012) ...........................................................30

*Mallinckrodt Chem. Works v. Missouri ex rel. Jones,*
   238 U.S. 41 (1915).....................................................................................55

*Maracich v. Spears,*
   570 U.S. 48 (2013).....................................................................................23

*Massachusetts v. Mellon,*
   262 U.S. 447 (1923)...................................................................................54

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010)...................................................................................25

*Monsanto Co. v. Geertson Seed Farms,*
   561 U.S. 139 (2010)...................................................................................11

*Morehouse Enterprises LLC v. ATF,*
   No. 22-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022) ..................*passim*

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ............................................................................ 10, 49

*Munn v. City of Ocean Springs,*
   763 F.3d 437 (5th Cir. 2014)............................................................. 30, 34

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
   138 S. Ct. 1461 (2018) .............................................................................56

*N.Y. State Rifle & Pistol Ass'n v. Cuomo,*
   804 F.3d 242 (2d Cir. 2015) ............................................................. 31

*National Broadcasting Co. v. United States,*
   319 U.S. 190 (1943) ......................................................................... 40

*National Lifeline Ass'n v. FCC,*
   921 F.3d 1102 (D.C. Cir. 2019) ....................................................... 47

*Nat'l Rest. Ass'n v. Solis,*
   870 F. Supp. 2d 42 (D.D.C. 2012) ................................................... 47

*Nat'l Rifle Ass'n v. Brady,*
   914 F.2d 475 (4th Cir. 1990) ........................................................... 14

*Nat'l Shooting Sports Found., Inc. v. Jones,*
   716 F.3d 200 (D.C. Cir. 2013) ......................................................... 19

*Nat'l Treasury Emps. Union v. Von Raab,*
   489 U.S. 656 (1989) ......................................................................... 58

*New York Central Securities Corp. v. United States,*
   287 U.S. 12 (1932) ........................................................................... 40

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   142 S. Ct. 2111 (2022) ....................................................... 25, 26, 52

*New York v. Burger,*
   482 U.S. 691 (1987) .................................................................. 17, 21

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.,*
   783 F.3d 527 (5th Cir. 2015) ........................................................... 25

*O'Reilly v. U.S. Army Corps of Eng'rs,*
   477 F.3d 225 (5th Cir. 2007) ........................................................... 56

*Panama Refining Co. v. Ryan,*
   293 U.S. 388 (1935) ......................................................................... 40

*Penn Cent. Transp. Co. v. City of New York,*
   438 U.S. 104 (1978) ......................................................................... 38

*Peoples Rts. Org., Inc. v. City of Columbus,*
   152 F.3d 522 (6th Cir. 1998) ........................................................... 32

*Phelps v. Budge,*
    188 F. App'x 616 (9th Cir. 2006) ................................................................32

*Reagan Nat'l Advertising v. City of Austin,*
    972 F.3d 696 (5th Cir. 2020)......................................................................29

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008)......................................................................34

*Roberts v. United States,*
    No. 04-cr-295, 2007 WL 9754483 (D.S.C. Oct. 30, 2007) ......................32

*Sabine River Auth. v. U.S. Dep't of Interior,*
    951 F.2d 669 (5th Cir. 1992)......................................................................10

*Sessions v. Dimaya,*
    138 S. Ct. 1204 (2018) ...............................................................................33

*Shell Offshore Inc. v. Babbitt,*
    238 F.3d 622 (5th Cir. 2001)......................................................................53

*Shinseki v. Sanders,*
    556 U.S. 396 (2009)....................................................................................52

*Sierra Club v. U.S. Dep't of Interior,*
    990 F.3d 909 (5th Cir. 2021)......................................................................49

*Sig Sauer, Inc. v. Brandon,*
    826 F.3d 598 (1st Cir. 2016) ........................................................................8

*Sig Sauer, Inc. v. Jones,*
    133 F. Supp. 3d 364 (D.N.H. 2015) ...........................................................20

*SIH Partners LLLP v. Comm'r of Internal Revenue,*
    923 F.3d 296 (3d Cir. 2019).......................................................................53

*Sw. Elec. Power Co. v. EPA,*
    920 F.3d 999 (5th Cir. 2019)......................................................................58

*Texas Ass'n of Mfrs. v. U.S Consumer Prod. Safety Comm'n,*
    989 F.3d 368 (5th Cir. 2021)................................................................47, 57

*Texas Clinical Labs. v. Sebelius,*
    612 F.3d 771 (5th Cir. 2010)............................................................................49

*Texas v. Becerra,*
    577 F. Supp. 3d 527 (N.D. Tex. 2021).............................................................19

*Texas v. Biden,*
    20 F.4th 928 (5th Cir. 2021) ............................................................................57

*Town of Chester v. Laroe Ests., Inc.,*
    581 U.S. 433 (2017).........................................................................................37

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ....................................................................................11

*United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns,*
    443 F.2d 463 (2d Cir. 1971) ............................................................................31

*United States v. Abbate,*
    970 F.3d 601 (5th Cir. 2020)...........................................................................34

*United States v. Annis,*
    446 F.3d 852 (8th Cir. 2006)...........................................................................15

*United States v. Arcadipane,*
    41 F.3d 1 (1st Cir. 1994)..................................................................................36

*United States v. Catanzaro,*
    368 F. Supp. 450 (D. Conn. 1973)..................................................................32

*United States v. Clark,*
    582 F.3d 607 (5th Cir. 2009)..................................................................... 30, 34

*United States v. Clinical Leasing Serv., Inc.,*
    925 F.2d 120 (5th Cir. 1991)...........................................................................35

*United States v. Drasen,*
    845 F.2d 731 (7th Cir. 1988)...........................................................................31

*United States v. Felsen,*
    648 F.2d 681 (10th Cir. 1981) .........................................................................32

*United States v. Garcia,*
    707 F. App'x 231 (5th Cir. 2017) ....................................................................24

x

*United States v. Kelly,*
    276 F. App'x 261 (4th Cir. 2007) ................................................................31

*United States v. Kent,*
    175 F.3d 870 (11th Cir. 1999) ..................................................................31

*United States v. Kirk,*
    105 F.3d 997 (5th Cir. 1997) ....................................................................41

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ..................................................................................24

*United States v. M-K Specialties Model M-14 Machinegun,*
    424 F. Supp. 2d 862 (N.D. W. Va. 2006) ................................................31

*United States v. Nat'l Dairy Prod. Corp.,*
    372 U.S. 29 (1963) ....................................................................................34

*United States v. Paul,*
    274 F.3d 155 (5th Cir. 2001) ....................................................................34

*United States v. Quiroz,*
    449 F.2d 583 (9th Cir. 1971) ....................................................................31

*United States v. Ryles,*
    988 F.2d 13 (5th Cir. 1993) ......................................................................15

*United States v. Stewart,*
    451 F.3d 1071 (9th Cir. 2006) ............................................................ 15, 41

*United States v. Theodoropoulous,*
    866 F.2d 587 ............................................................................................15

*United States v. Whalen,*
    337 F. Supp. 1012 (S.D.N.Y. 1972) ........................................................31

*United States v. Wick,*
    697 F. App'x 507 (9th Cir. 2017) ............................................................15

*United States v. Wick,*
    No. CR 15-30-M-DLC, 2016 WL 10612608 (D. Mont. Mar. 11, 2016) ................31

*United States v. Williams,*
   553 U.S. 285 (2008)....................................................................................30

*United States v. Wojcikiewicz,*
   403 F. App'x 483 (11th Cir. 2010) .............................................................31

*Util. Air Reg. Grp. v. EPA,*
   573 U.S. 302 (2014)....................................................................................39

*VanDerStok v. Garland,*
   No. 4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022) .................16

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
   455 U.S. 489 (1982).............................................................................30, 35

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989)....................................................................................33

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008)....................................................................................30

*Whitman v. American Trucking Ass'ns,*
   531 U.S. 457 (2001)....................................................................................40

*Worldcall Interconnect, Inc. v. FCC,*
   907 F.3d 810 (5th Cir. 2018)......................................................................52

*Yakus v. United States,*
   321 U.S. 414 (1944)....................................................................................40

## CONSTITUTION

U.S. Const. Art. III..........................................................................................11

## STATUTES

5 U.S.C. § 703.................................................................................................55

5 U.S.C. § 706...........................................................................................*passim*

18 U.S.C. § 921 .........................................................................................*passim*

18 U.S.C. § 922..........................................................................................3, 4

18 U.S.C. § 923 ............................................................................................. 3, 4, 40

18 U.S.C. § 926 ........................................................................................... 4, 14, 40

26 U.S.C. § 5842 ...................................................................................................40

26 U.S.C. § 5845 ............................................................................................ 17, 31

26 U.S.C. § 7801 ...................................................................................................14

28 U.S.C. § 599A ..................................................................................................14

Act of Aug. 24, 1937, 50 Stat. 752-753.............................................................55

Pub. L. No. 90-351, 82 Stat. 197, 225 (1968) .....................................................3

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................................10

**REGULATIONS**

27 C.F.R. part 478 .................................................................................................4

27 C.F.R. § 478.11 ........................................................................................ 4, 6, 46

27 C.F.R. § 478.12 .......................................................................................*passim*

27 C.F.R. § 478.92 ...............................................................................................21

27 C.F.R. part 479 .................................................................................................4

27 C.F.R. § 479.11 ...............................................................................................31

27 C.F.R. § 479.102 .............................................................................................21

28 C.F.R. § 0.130 ........................................................................................... 8, 14

Final Rule, Commerce in Firearms and Ammunition,
   33 Fed. Reg. 18,555 (Dec. 14, 1968) (formerly codified at 27 C.F.R. § 478.11)....................4

Proposed Rule, Definition of "Frame or Receiver" and Identification of Firearms,
   86 Fed. Reg. 27,720 (May 21, 2021) .................................................................*passim*

Final Rule, Definition of "Frame or Receiver" and Identification of Firearms,
   87 Fed. Reg. 24,652 (Apr. 26, 2022) ...................................................................*passim*

**LEGISLATIVE MATERIALS**

111 Cong. Rec. 5527 (1965) ...........................................................................21

H.R. Rep. No. 79-1980 (1946) ......................................................................56

S. Rep. No. 79-752 (1945) .............................................................................56

S. Rep. No. 88-1340 (1964) ...........................................................................15

S. Rep. No. 89-1866 (1966) ...........................................................................20

S. Rep. No. 90-1501 (1968) ...........................................................................20

**OTHER AUTHORITIES**

*Are "80%" or "unfinished" receivers illegal?*, ATF, *available at*
   https://www.atf.gov/firearms/qa/are-%E2%80%9C80%E2%80%9D-or-
   %E2%80%9Cunfinished%E2%80%9D-receivers-illegal ...........................................50

ATF Letter to Private Counsel #303304 (Mar. 20, 2015) .................................. 19, 50

ATF, Nat'l Firearms Act Handbook § 7.2.4 (2009) ......................................................8

*Impact of Final Rule 2021-05F on Partially Complete AR-15/M-16 Type Receivers*
   (Sept. 27, 2022),
   www.atf.gov/firearms/docs/open-letter/all-ffls-september-2022-impact-final-rule-2021-
   05f-partially-complete-ar/download .......................................................... 13, 36

*Impact of Final Rule 2021-05F on Partially Complete Polymer80, Lone Wolf, and Similar Semiautomatic
   Pistol Frames* (Dec. 27, 2022),
   https://www.atf.gov/rules-and-regulations/docs/open-letter/all-ffls-dec2022-open-
   letter-impact-final-rule-2021-05f/download ..........................................................36

*Webster's New International Dictionary of the English Language* 2291 (2d ed. 1958).........................54

**INTRODUCTION**

In its motion for summary judgment, Plaintiff Division 80, LLC ("Plaintiff" or "Division 80") raises a plethora of legal claims relating to the Final Rule "Definition of 'Frame or Receiver' and Identification of Firearms" issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") on April 26, 2022 (the "Rule"). However, Division 80 has not established Article III standing to challenge the Rule because it fails to submit evidence that it sells any product within the Rule's scope. Moreover, while Division 80 clearly disagrees with certain definitions of terms contained in the Rule, such disagreement does not make the Rule, or any specific portion thereof, unlawful. Each of the legal arguments raised by Division 80 is without merit and should be rejected.

Division 80 first argues that this Court should invalidate the Rule because the amended definitions of two terms contained in the Rule allegedly exceed the authority delegated to the ATF by Congress. However, the statutory delegation of authority to ATF to effectuate the federal firearms statutes at issue is expressly broad, and ATF has for many years used that delegated authority to provide regulatory definitions for these statutory terms. Moreover, the definitions at issue best accord with the language, history, and purpose of the Gun Control Act of 1968 ("GCA"), and therefore Division 80's statutory arguments should be rejected.

Division 80 asserts that this Court should invalidate the Rule because the definitions contained in the Rule differ in some respects from the definitions originally proposed in the Notice of Proposed Rulemaking issued on May 21, 2021 (the "Notice"). However, all of the changes to the definitions in the Rule arose out of the definitions contained in the Notice, and the Administrative Record demonstrates that the changes were the result of ATF's careful

consideration of the more than 290,000 comments ATF received.  ATF's consideration of these comments and the resulting changes to the Rule are precisely the type of changes courts have consistently recognized as permissible under the Administrative Procedure Act ("APA"), and indeed, the very purpose of notice and comment rulemaking.

Division 80's argument that ATF's issuance of the Rule was arbitrary and capricious in violation of the APA fares no better.  Its primary argument is that the Rule constituted a change in position by ATF on several issues.  However, it is perfectly permissible for ATF, like any Federal agency, to change its position on an issue provided that its new position is lawful and the agency adequately explains the basis for its change.  Here, ATF addressed and explained its reasoning for each of the challenged changes.

Division 80 also raises a number of constitutional issues, none of which have merit. Division 80 fails to develop any substantive Second Amendment claim, which would fail in any event because the Rule does not prevent any person from keeping or bearing arms. Division 80 also claims that the Rule violates the First Amendment because the amended definition of "frame or receiver" provides that ATF "may consider" instructions, guides, or marketing materials, along with other factors, in determining whether a product will be classified as a "frame or receiver."  However, this portion of the amended definition does not regulate, burden, or restrict speech at all, and therefore cannot be a violation of the First Amendment.  The multiple other constitutional claims fare no better.  The Rule is not unconstitutionally vague because it is based upon well-established statutory language and concepts and contains detailed definitions and examples sufficient to provide notice of how it will operate.  Nor does the Rule violate the separation of powers or the non-delegation

doctrine because the Rule was issued pursuant to multiple valid delegations of authority to ATF contained in the GCA and the National Firearms Act of 1934 ("NFA"). The Rule is also not a regulatory taking because personal property such as a weapon cannot be the subject of a regulatory takings claim, and even if it could, nothing in the Rule deprives any law-abiding weapon owner of the use or possession of any personal property. Finally, the Rule presents no Commerce Clause issues because even if some of the products governed by the Rule are entirely manufactured, purchased, and owned in a single state, there is an aggregate effect on interstate commerce.

Accordingly, because none of the arguments raised by Division 80 has any legal merit, this Court should reject them all and grant summary judgment in favor of Defendants.

## BACKGROUND

### I.   Statutory Background

Congress enacted the Gun Control Act of 1968, *as amended*, 18 U.S.C. §§ 921 *et seq.*, after finding that "existing Federal controls over [widespread traffic in firearms moving in interstate commerce] do not adequately enable the States to control this traffic within their own borders." Pub. L. No. 90-351, Title IV, § 901(a)(1), 82 Stat. 197, 225 (1968). Congress specifically determined that "only through adequate Federal control . . . over *all* persons engaging in the businesses of importing, manufacturing, or dealing in [these weapons], can this grave problem be properly dealt with." *Id.* § 901(a)(3), 82 Stat. at 225 (emphasis added). Accordingly, Congress enacted requirements for persons engaging in the business of importing, manufacturing, or dealing in "firearms." *See generally* 18 U.S.C. §§ 922-923.

Congress defined "firearm" to include "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or receiver of any such weapon." 18 U.S.C. § 921(a)(3). As Plaintiff concedes, *see* Div. 80 LLC's Mot. for Summ. J. at 2, ECF No. 87 ("Pl.'s MSJ"), Congress did not define the terms "frame" or "receiver." *See* 18 U.S.C. § 921. Congress requires individuals and entities that import, manufacture, or deal in firearms to receive a federal firearms license, *id.* § 923(a), to maintain records of firearm acquisition and transfer as prescribed by regulation, *id.* § 923(g)(1)(A), and to conduct background checks before transferring firearms to a non-licensee, *id.* § 922(t). Congress also requires licensed importers and manufacturers to identify each firearm they import or manufacture by means of a serial number on the receiver or frame of the weapon. *Id.* § 923(i). Congress has also vested in ATF the authority to prescribe regulations "necessary to carry out the provisions of" the GCA. *Id.* § 926(a).

## II.   Regulatory Background

ATF has promulgated regulations implementing the GCA and NFA. *See* 27 C.F.R. parts 478-479. Over fifty years ago, ATF defined the statutory term "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion." Final Rule, Commerce in Firearms and Ammunition, 33 Fed. Reg. 18,555, 18,558 (Dec. 14, 1968) (formerly codified at 27 C.F.R. § 478.11). That definition was meant to provide direction as to which portion of a weapon is the frame or receiver for purposes of licensing, serialization, and recordkeeping, thereby ensuring that a component necessary for the weapon's functioning

4

could be traced if the weapon was used in a crime.  Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652, 24,652 (Apr. 26, 2022) (Rule).

However, a restrictive application of this definition—as some courts have recently used—would not describe the frame or receiver of most current firearms, and would allow for circumvention of federal firearms laws.  *Id.*  Most modern weapon designs have a split or multi-piece receiver where the relevant fire control components either are housed by more than one part of the weapon (*e.g.*, the upper and lower receiver of an AR-15 rifle) or incorporate a striker rather than a hammer to fire the weapon.  *Id.*  Under a restrictive application of the regulatory definition, as many as 90% of all firearms would not have *any* frame or receiver subject to regulation.  *Id.*

Furthermore, technological advances in the decades since the "frame or receiver" definition was adopted have made it easier for companies to create weapon parts kits, standalone frame or receiver parts, and easy-to-complete frames or receivers, and some have sold these items to unlicensed persons without being licensed themselves, and without maintaining any records or conducting background checks.  *Id.*  These parts kits, standalone frame and receiver parts, and partially complete frames and receivers allow unlicensed persons—including persons prohibited from possessing firearms—to make firearms quickly and easily.  *Id.*  Because such privately made firearms typically lack serial numbers, it is extremely difficult for law enforcement to trace them when used in a crime.  *Id.* at 24,652, 24,659.

### III.    The Rule

To update its decades-old definition of "frame and receiver," ATF published a notice of proposed rulemaking in 2021.  Proposed Rule, Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27,720 (May 21, 2021) (Notice).  ATF promulgated the final rule on April 26, 2022, and issued minor technical corrections on August 22, 2022. 87 Fed. Reg. 24,652, 51,249.  Upon consideration of over 290,000 public comments, ATF explained its responses to the comments, its reasoned basis for the provisions of the Rule, and its rationale for updating its regulations.  *Id.* at 24,652-734.  As relevant here, the Rule contains the following key provisions:

### A.    Definition of "Firearm"

Under the GCA and implementing regulations, a "firearm" includes "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  18 U.S.C. § 921(a)(3)(A); 27 C.F.R. § 478.11.  This definition thus includes inoperable weapons, even though they will not expel a projectile by the action of an explosive at the time of sale or transfer, if they are "designed to" or "may readily be converted" to do so.  *See* 87 Fed. Reg. at 24,661 nn.42-43 (citing case law).  In recent years, weapon parts kits, or aggregations of weapon parts—some of which contain all components necessary to complete a functional weapon within a short time period—have increasingly been sold to individuals either directly from kit manufacturers or from retailers, without serialization, background checks, or recordkeeping.  *Id.* at 24,662.  Some of these firearm kits include jigs, templates, and tools that allow the purchaser to complete the weapon fairly or reasonably efficiently, quickly, and easily to a functional state.  *Id.*  As courts have

recognized even before the Rule's promulgation, such weapon parts kits or aggregations of weapon parts that are *designed to* or *may readily be converted to* expel a projectile by the action of an explosive are "firearms" under the GCA and its regulations. *Id.* at 24,662 n.44 (citing case law).

Consistent with this case law, and to further public safety, the Rule adds a sentence to ATF's regulatory definition of "firearm" providing that "[t]he term shall include a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." *See id.* at 24,735.

## B.      Definition of "Frame or Receiver"

The Rule accepts the recommendations of numerous commenters and provides an updated definition of the term "frame or receiver."[1]  *See id.* at 24,652, 24,727.  The Rule further defines "frame" for handguns and "receiver" for rifles, shotguns, and other weapons that expel a projectile.  *See id.* at 24,727, 24,735.  Unlike the 1968 definition, these updated definitions now describe only a *single* housing or structural component for a *specific* fire control component of a given weapon—including "variants thereof," a term that is also defined.  *Id.*  For handguns (or variants thereof), the frame is the housing or structure for the primary energized component designed to hold back the hammer, striker, bolt, or similar component before initiating the firing sequence (*i.e.*, the sear or equivalent).  *Id.*  For long guns and other projectile weapons (or variants thereof), the receiver is the housing or structure for the primary

---

[1] Previously, ATF regulations included definitions for both "firearm frame or receiver" and "frame or receiver."  87 Fed. Reg. at 24,727.

component designed to block or seal the breech before initiating the firing sequence (*i.e.*, the bolt, breechblock, or equivalent).  *Id.*

The definition of "frame or receiver" includes a frame or receiver that is partially complete, disassembled, or nonfunctional—including a frame or receiver parts kit—that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver.  *Id.* at 24,739; *see also id.* at 24,663, 24,727-28.  However, the definitions of "frame" and "receiver" specifically exclude forgings, castings, printings, unmachined bodies, or similar articles that have not yet reached a stage of manufacture where they are clearly identifiable as unfinished component parts of weapons—*e.g.*, unformed blocks of metal, liquid polymers, and other raw materials.  *Id.* at 24,663, 24,728, 24,739.

To provide notice to the firearms industry and the public as to how ATF evaluates partially complete, disassembled, or nonfunctional frames or receivers (including firearm parts kits) when making firearm classifications,[2] the Rule states that when issuing classifications, ATF may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold or otherwise made available with the item or kit.  *Id.* at 24,724-25, 24,739.  To provide additional clarity, the Rule includes five non-exclusive examples

---

[2] Exercising its delegated authority to administer federal firearms laws, 28 C.F.R. § 0.130(a)(1)-(2), ATF has provided both formal guidance (regulations) and informal guidance (classification determinations) as to what constitute "firearms."  Although a manufacturer or dealer is not legally required to seek an agency determination whether its product constitutes a "firearm" prior to the product's manufacture or sale, ATF provides such determinations to manufacturers or dealers who submit requests for classification.  *See* 87 Fed. Reg. at 24,666; *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599 (1st Cir. 2016) (citing ATF, Nat'l Firearms Act Handbook § 7.2.4 (2009)).

illustrating the application of the "frame or receiver" definition to a "partially complete, disassembled, or nonfunctional frame or receiver." *Id.* at 24,739.

The Rule also defines "[r]eadily" to mean a process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. *Id.* at 24,735. Relevant factors to making this determination include: (1) time (how long it takes to finish the process), (2) ease (how difficult it is to do so), (3) expertise (what knowledge and skills are required), (4) equipment (what tools are required), (5) parts availability (whether additional parts are required and how easily they can be obtained), (6) expense (how much it costs), (7) scope (the extent to which the subject of the process must be changed to finish it), and (8) feasibility (whether the process would damage or destroy the subject of the process, or cause it to malfunction). *Id.* This definition, including relevant factors, is based on case law interpreting the terms "may readily be converted to expel a projectile" in the GCA and "can be readily restored to shoot" in the NFA. 86 Fed. Reg. at 27,730 & n.58 (citations omitted).

## C.     Definition of "Privately Made Firearm"

To account for recent technological advances, the Rule clarifies that the GCA's definition of "firearm" includes a "privately made firearm." 87 Fed. Reg. at 24,735. A "privately made firearm" is a firearm (including a frame or receiver) that is assembled or otherwise produced by a person other than a licensed manufacturer, and that does not contain a serial number placed by a licensed manufacturer at the time of production. *Id.* The Rule does not restrict in any way the private making of firearms by non-licensees for personal use who are not prohibited by law from possessing them, and requires only that such firearms that

are taken into inventory by licensees be serialized and recorded so that they may be traced by

law enforcement if they are later involved in crime.  *Id.* at 24,653, 24,742, 24,744.

## IV.    The Present Case

On May 9, 2022, Plaintiff filed the present action, seeking preliminary and permanent

injunctive relief enjoining ATF from enforcing the Rule.  Compl., ECF No. 1.  On August 23,

2022, the Court denied Plaintiff's motion for preliminary injunction, holding that Plaintiff had

failed to show that it would suffer irreparable harm absent an injunction or that the balance

of equities favored equitable relief.  Mem. Op. & Order, ECF No. 74.

## LEGAL STANDARDS

Summary judgment is proper only when, *inter alia*, "the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  Where, as here, a party seeks judicial review of

federal agency action under the APA, the action will not be set aside unless it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §

706(2)(A).  This standard "is narrow and a court is not to substitute its judgment for that of

the agency."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The Fifth Circuit has stressed: "Under this highly deferential standard of review, a reviewing

court has the 'least latitude in finding grounds for reversal.'"  *Sabine River Auth. v. U.S. Dep't of*

*Interior*, 951 F.2d 669, 678 (5th Cir. 1992) (citation omitted).

Agency action must be upheld if the action "is rational, based on consideration of the

relevant factors and within the scope of the authority delegated to the agency."  *State Farm*, 463

U.S. at 42.  In other words, "if the agency considers the factors and articulates a rational

relationship between the facts found and the choice made, its decision is not arbitrary and

capricious." *Delta Found., Inc. v. United States*, 303 F.3d 551, 563 (5th Cir. 2002) (citation omitted).  Reviewing courts "uphold an agency's action if 'its reasons and policy choices satisfy minimum standards of rationality.'"  *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 723 (5th Cir. 2013) (citation omitted).

## ARGUMENT

### I.   Division 80 Has Not Established Article III Standing.

Article III of the Constitution limits the jurisdiction of federal courts to deciding actual "Cases" and "Controversies," U.S. Const. art. III, § 2, which requires, among other things, that a plaintiff establish standing to sue, *see, e.g.*, *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). "To establish standing, each plaintiff must demonstrate an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Attala Cnty., Miss. Branch of NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *E.T. v. Paxton*, 41 F.4th 709, 718 n.2 (5th Cir. 2022) (emphasis omitted) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021)). To satisfy this burden, "each element" of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *El Paso Cnty. v. Trump*, 982 F.3d 332, 338 (5th Cir. 2020) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Thus, at summary judgment, [a plaintiff] can't rely on 'mere allegations'; it 'must set forth by affidavit or other evidence specific facts' supporting standing." *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Lujan*, 504 U.S. at 561).

11

Division 80's claims must be dismissed for lack of subject matter jurisdiction because it has not carried its burden to establish that the products it allegedly sells are "firearms" under the Rule.  In its Complaint, Division 80 alleges only that it "is a business that distributes receiver blanks."  Compl. ¶ 5; *see also id.* ¶¶ 6, 27, 95-99.  It does not allege, much less submit evidence, that the receiver blanks it allegedly distributes are "designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver," as is required for such products to constitute "firearms" under the Rule.  87 Fed. Reg. at 24,739 (codified as amended at 27 C.F.R. § 478.12(c)).  Indeed, the Rule makes clear that, for example, "[a] billet or blank of an AR-15 variant receiver without critical interior areas having been indexed, machined, or formed that is not sold, distributed, or possessed with instructions, jigs, templates, equipment, or tools such that it may readily be completed is *not* a receiver."  *Id.* (Example 4 to paragraph (c)) (emphasis added).

Division 80 has not submitted any evidence alongside its motion for summary judgment that could support an inference that the receiver blanks that it allegedly distributes are "firearms" within the meaning of the Rule.  To the contrary, at the hearing on Division 80's preliminary injunction motion, Plaintiff's counsel offered as a "demonstrative" of "the actual product that [Division 80] sells" an "incomplete AR receiver" that "doesn't come with the tool or the jig, the jig being a device that can be attached to it . . . that can assist the tool in making the sort of machine work and drilling and metalwork that needs to be done to complete it."  Hr'g on Pl.'s Mot. for Prelim. Inj. at 23, ECF No. 68.  To the extent that Division 80's product lineup consists solely of AR-variant receivers "without critical interior areas having been indexed, machined, or formed that [are] not sold, distributed, or possessed with

instructions, jigs, templates, equipment, or tools such that [they] may readily be completed," Division 80 need not comply with the Rule's requirements and thus lacks standing to challenge the Rule. 87 Fed. Reg. at 24,739 (codified as amended at 27 C.F.R. § 478.12(c)) (Example 4 to paragraph (c)). Indeed, ATF issued an Open Letter on September 27, 2022, reaffirming that "[a] partially complete AR-type receiver with no indexing or machining of any kind performed in the area of the fire control cavity is not classified as a 'receiver,' or 'firearm,' if not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit." *Impact of Final Rule 2021-05F on Partially Complete AR-15/M-16 Type Receivers* (Sept. 27, 2022), www.atf.gov/firearms/docs/open-letter/all-ffls-september-2022-impact-final-rule-2021-05f-partially-complete-ar/download, at 3 (emphasis omitted).

In sum, neither Division 80's bare allegations that it distributes "receiver blanks" nor its counsel's statements that Division 80 sells certain incomplete AR receivers without tools or jigs suffice to establish that its products are covered under the Rule's requirements. Having failed to submit any evidence to support that inference, Division 80's claims must be dismissed in their entirety for lack of subject-matter jurisdiction.

## II.    The Rule Is Consistent with ATF's Regulatory Authority.

Division 80 asserts that ATF had no statutory authority to include definitions of the terms "firearm" and "frame or receiver" in the Rule. Compl. ¶¶ 105-07; Pl.'s MSJ at 10-12. However, the Rule is a valid exercise of the authority ATF has been expressly granted by Congress, and the definitions of these terms contained in the Rule reflect the best interpretation of the relevant statutory terms.

The Attorney General ("AG") is responsible for enforcing the GCA and the NFA, and Congress and the AG have expressly delegated the responsibility for administering and enforcing the GCA and NFA to the Director of ATF.[3]  18 U.S.C. § 926(a) expressly delegates authority to prescribe "such rules and regulations as are necessary to carry out the provisions" of the statute.  "Because § 926 authorizes the [AG] to promulgate those regulations which are 'necessary,' it almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary.'"  *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990).  Pursuant to this authority, ATF has for years issued regulations that define statutory terms, including "firearm" and "frame or receiver."  However, existing regulations are not permanent, inflexible rules designed to last indefinitely; instead, agencies "are neither required nor supposed to regulate the present and future within the inflexible limits of yesterday."  *Am. Trucking Ass'n v. Atchison, Topeka, and Santa Fe Ry. Co.*, 387 U.S. 397, 416 (1967).  The question before the Court, then, is whether the definitions challenged by Division 80 comport with the language of the statute.  They do, for the reasons set forth below.

## A.    The Amended Definition of "Firearm"

Division 80 argues that ATF acted in excess of its statutory authority by including "weapon parts kits" within the definition of "firearm."  Pl.'s MSJ at 10-12.

As an initial matter, the idea that the GCA definition of "firearm" encompasses something other than a completely assembled and functional weapon is not a novel idea set forth for the first time in the Rule, but rather a longstanding and widely-held interpretation of

---

[3] *See* 18 U.S.C. § 926(a); 26 U.S.C. § 7801(a)(2); 28 U.S.C. § 599A(c)(1); 28 C.F.R. § 0.130(a)(1)-(2).

the statute.  Courts have long recognized that a disassembled weapon constitutes a "firearm" for purposes of the GCA.[4]  Division 80 essentially argues that this Court should add a new term—"complete" or "fully functional"—to modify the word "weapon" in the statutory definition of "firearm."  But this would directly contradict the statutory text, which states that a "firearm" is "any weapon (including a starter gun) which will *or is designed to or may readily be converted to* expel a projectile by the action of an explosive…"  18 U.S.C. § 921(a)(3)(A) (emphasis added).  Contrary to Division 80's assertion that the plain language constitutes an "unambiguous exclusion" of anything but a complete, functional weapon from the definition of "firearm," Pl.'s MSJ at 12, the statutory language's reference to a starter gun[5] and to weapons that are merely "designed to" or "may readily be converted to" expel a projectile demonstrate a clear Congressional intent for the term "firearm" to encompass more than just fully functional weapons.  Thus, including weapon parts kits within the definition of "firearm" is consistent with statutory text, Congressional intent, and courts' longstanding interpretation of the GCA.

As *Morehouse Enterprises LLC v. ATF*, No. 22-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022), held in rejecting an argument identical to that raised by Division 80 here, "[t]he language

---

[4]  *See, e.g.*, *United States v. Wick*, 697 F. App'x 507, 508 (9th Cir. 2017); *United States v. Stewart*, 451 F.3d 1071, 1073 n.2 (9th Cir. 2006): *United States v. Annis*, 446 F.3d 852, 857 (8th Cir. 2006); *United States v. Ryles*, 988 F.2d 13, 16 (5th Cir. 1993); *United States v. Theodoropoulous*, 866 F.2d 587, 595 n.3d (3d Cir. 1989).

[5]  A "starter gun" is a gun designed for use with "blank" ammunition.  Congress was concerned at the ease with which such a device could be converted to expel live ammunition, and cited in the GCA's legislative history the case of an individual who made bulk purchases of starter guns and "would then, at his residence, disassemble them, and . . . bore out the plugged barrel and enlarge the cylinder chambers to accommodate .22-caliber cartridges."  *See* S. Rep. No. 88-1340, at 14 (1964) (attached as Ex. 1).

from the Final Rule—'completed, assembled, restored, or otherwise converted,' as well as the weapons kits at issue—fit squarely within the GCA's "firearm" definition because after delivery, the kits are easily converted from mere parts into a weapon that expels a projectile." *Id.* at *5.[6]  Accordingly, the Rule's amendment of the term "firearm" is consistent with the statutory definition of that term and the purpose and intent of the GCA.

## B.     The Amended Definition of "Frame or Receiver"

Division 80 argues that the Rule's definition of "frame or receiver" was amended in excess of ATF's delegated authority because it improperly "injects" into the definition of "frame or receiver" the term and concept of "readily" which is contained only in another portion of the statutory definition of "firearm."  Pl.'s MSJ at 10-11.

In so arguing, Division 80 essentially seeks to insert a new adjective modifying "frame or receiver" into the statute—such as "actual," "complete," "functional," or "operable"— where none exists.  *See id.* at 11 (arguing that Congress could not have intended the definition of "frame and receiver" to include "nonfunctional" components").  However, nothing in the statute expressly requires that a frame or receiver be complete, or functional, to qualify as a "firearm" under 18 U.S.C. § 921(a)(3)(B).  Because the GCA did not define "frame or receiver," Congress did not prescribe what "frame or receiver" should encompass, and it fell upon ATF to define the term, which the agency has done for many years.  The crucial question left unresolved by the statute is at what point a mere component or foundation of a component, such as a piece of metal or plastic—which is unregulated under federal firearms

---

[6] *But see VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 4009048, at *3-7 (N.D. Tex. Sept. 2, 2022), *appeal filed.*

law—becomes a "frame or receiver" that is so regulated.  The amended definition answers this important question.  While Division 80 argues that the use of the term "readily" in the amended definition of "frame or receiver" means ATF must have improperly "inject[ed]" that term from the statutory definition of "firearm," ATF's use of the term "readily" incorporates a term that Congress has used repeatedly in federal firearms laws—not only the GCA, but also elsewhere, *see, e.g.*, 26 U.S.C. § 5845(b) (defining "machinegun" as "any weapon which shoots, is designed to shoot, or can be *readily* restored to shoot, automatically…").  The *Morehouse* court considered an identical argument and held that it "misses the mark" because "the Final Rule does not improperly use the statutory term 'readily.'"  *Morehouse*, 2022 WL 3597299, at *6.

This amendment to the regulatory definition of "frame or receiver" ensures that the GCA and NFA accomplish what Congress intended the statutes to do.  Any other approach would result in persons being able to easily circumvent the requirements of the GCA and NFA by producing or purchasing almost-complete frames or receivers that could easily be altered to produce a functional frame or receiver.  This would thwart Congress's purpose in enacting the GCA and NFA.  *See New York v. Burger*, 482 U.S. 691, 713 (1987) ("[T]he regulatory goals of the Gun Control Act . . . ensure[] that 'weapons [are] distributed through regular channels and in a traceable manner,'" thus making "possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms.") (citation omitted).  The clear Congressional intent, as indicated by the plain language and the statutory scheme of the GCA, was to regulate—as a "firearm"—the frame or receiver of any weapon that is designed to or may readily be converted to expel a projectile.  By updating the definition of "frame or receiver," ATF has taken a reasonable approach that incorporates well-known and oft-

interpreted concepts such as the "may readily be completed, assembled, restored, or otherwise converted" language. As the *Morehouse* court held in rejecting an argument identical to that raised by Division 80 here, "adopting Plaintiffs' position would appear to contradict the plain language of the GCA, which clearly defined 'firearms' more broadly than a fully operational weapon." *Morehouse*, 2022 WL 3597299, at *6.

Accordingly, including within the amended definition of "frame or receiver" a component "that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver" is within ATF's well-established delegated authority. This amended definition is consistent with the plain language of the statute and Congressional intent, and it avoids an absurd result of allowing individuals to easily circumvent federal firearms regulations by purchasing a product that can easily be converted to the key component of a functional weapon without any of the licensing, background checks, recordkeeping, or tracing requirements that apply to "firearms."

### C. The Rule Reflects the Best Interpretation of the Relevant Statutory Terms.

The Rule reflects the best interpretation of the statutory term "frame or receiver." As explained above, *see supra* Sections II.A-B, the Rule is consistent with the GCA's text, context, and purpose, both with respect to the regulation of firearm frames and receivers and of weapon parts kits. Moreover, the Rule's interpretation is persuasive. ATF issued a thorough analysis that sets forth its reasoning. It explained that, although the GCA and its implementing regulations define a "firearm" to include its "frame or receiver," neither delineates when a frame or receiver is created. 86 Fed. Reg. at 27,729. Nor do common dictionary definitions of "frame" or "receiver" answer this question. *See id.* at 27,720 n.4 (quoting dictionary

definitions of these terms). ATF must use its technical expertise to draw the line somewhere, and "courts are generally unwilling to review line-drawing performed by the agency unless a petitioner can demonstrate that lines drawn are patently unreasonable, having no relationship to the underlying regulatory problem." *Texas v. Becerra*, 577 F. Supp. 3d 527, 551 (N.D. Tex. 2021) (citation and internal punctuation omitted); *accord Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214-15 (D.C. Cir. 2013) (citation omitted); *see also Gulf Restoration Network. v. U.S. Dep't of Transp.*, 452 F.3d 362, 370 n.15 (5th Cir. 2006) ("[W]e find the Secretary has wide discretion in determining where to draw the line, that the line must be drawn somewhere, and that he acted within his discretion when he [drew the line as he did.]").

ATF made a reasonable line-drawing determination here. The crucial inquiry is at what point an unregulated piece of metal, plastic, or other material becomes a "frame or receiver" that is a regulated item under federal law. 87 Fed. Reg. at 24,685. To make this determination, ATF's position even before the Rule had been that a piece of metal, plastic, or other material becomes a frame or receiver when it reaches a "critical stage of manufacture:" in other words, when the article is brought to a stage of completeness that will allow it to accept the firearm components it is designed for, using basic tools in a reasonable amount of time. *Id.* (citing ATF Letter to Private Counsel #303304 (Mar. 20, 2015)). At this "critical stage of manufacture," an item becomes sufficiently complete to function as a frame or receiver, or may be readily completed or converted to accept the parts it is intended to house or hold. 86 Fed. Reg. at 27,729. By contrast, unformed blocks of metal, liquid polymers, and other raw materials have not reached this critical stage of manufacture and are not frames or receivers. 87 Fed. Reg. at 24,686. However, once a forging, casting, or additive printing for a frame or

receiver that is clearly identifiable as a component part of a weapon—*i.e.*, a partially complete frame or receiver—has reached a stage of manufacture where it can readily be completed or converted into a *functional* frame or receiver, it is a "frame or receiver" under the GCA. *Id.*[7]

This line-drawing determination is consistent with the legislative history of federal firearms laws. *See* S. Rep. No. 90-1501, at 31 (1968) ("Any machinegun or frame or receiver *which is readily restorable* would be treated as serviceable.") (emphasis added); S. Rep. No. 89-1866, at 73 (1966) (clarifying that "firearm" includes "starter pistols which may be converted to fire a projectile by boring a hole through an obstruction in the barrel, substitution of a barrel which will permit the firing of a projectile, or otherwise converted to fire a projectile") (attached as Ex. 2). It is also consistent with the manner in which Congress has treated similar issues in analogous statutes, *see supra* Section II.B, and is informed by ATF's expertise in firearms. *See Innovator Enters., Inc. v. Jones*, 28 F. Supp. 3d 14, 22 (D.D.C. 2014) ("The Firearms Technology Branch of ATF has expertise in classifying firearms and firearm silencers—much more so than the Court."); *Sig Sauer, Inc. v. Jones*, 133 F. Supp. 3d 364, 371 (D.N.H. 2015) (explaining that examination of firearms parts and comparison with other items on the market "require[s] expertise that is well within the ATF's grasp . . . [and] entitled to substantial deference"). And the same is true with respect to ATF's line-drawing determination as to whether a disassembled "firearm" in the form of a weapon parts kit "is designed to or may readily be converted to expel a projectile by the action of an explosive[.]" 18 U.S.C. § 921(a)(3)(A).

---

[7] These items, well known to the firearms industry, have been regulated for importation and exportation as "defense articles" since at least 1939. *Id.* at 24,678 & n.78, 24,697.

The logic of ATF's determination is also underscored by its consistency with the principal purpose underlying the GCA, namely, "to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them.'" *Abramski v. United States*, 573 U.S. 169, 181 (2014) (quoting *Huddleston v. United States*, 415 U.S. 814, 824 (1974)).  Clarifying that partially complete frames or receivers can be "firearms" within the meaning of federal law is necessary in light of the widespread availability of unlicensed and unregulated partially complete frames or receivers that are often sold as part of easy-to-complete kits.  *See* 27 C.F.R. §§ 478.92(c), 479.102(c); 87 Fed. Reg. at 24,686.  Otherwise, prohibited persons could easily circumvent the requirements of federal law—including background checks and firearms serialization—simply by buying almost-complete frames or receivers.  87 Fed. Reg. at 24,686. Indeed, many prohibited persons have easily obtained such items and assembled their own firearms at home.  *Id.* at 24,655-56.  Adopting Plaintiff's contrary interpretation of the statute would mean that prohibited persons could easily make or acquire virtually untraceable firearms directly from unlicensed manufacturers, which would unreasonably thwart Congress's evident purpose in enacting the GCA.  *Id.* at 24,686; *see Burger*, 482 U.S. at 713 ("[T]he regulatory goals of the [GCA] . . . ensure[] that weapons [are] distributed through regular channels and in a traceable manner and [make] possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms.") (citation omitted).  It would also mean that prohibited persons could purchase weapon parts kits that constitute "firearms" in a disassembled form, and that are designed to or may readily be converted to expel a projectile by the action of an explosive.  But Congress defined "firearm" broadly to avoid such circumvention.  *See* 111 Cong. Rec. 5527 (1965) (explaining that "extend[ing]" the definition

of firearm "to include any weapon by whatsoever name known 'which will,' or 'which may be readily converted to,' expel a projectile or projectiles by the action of an explosive" "represents a much needed clarification and strengthening of existing law *designed to prevent circumvention* of the purposes of the" GCA) (emphasis added) (attached as Ex. 3).

Finally, the agency's decision reflects a consistently applied policy. As explained above, even before the Rule, ATF has maintained that a piece of metal, plastic, or other material becomes a frame or receiver when it reaches a "critical stage of manufacture." The Rule preserves this policy, while applying it to an updated definition of "frame or receiver" that takes stock of decades of technological advances in firearms manufacturing. And to maintain consistency, ATF has grandfathered existing complete frame or receiver designs previously determined by the agency to be the firearm "frame or receiver" of a given weapon. 87 Fed. Reg. at 24,653; *see also id.* at 24,683, 24,693. Moreover, ATF set out its reasoning for deciding not to grandfather partially complete, disassembled, or nonfunctional frames or receivers (including weapon or frame or receiver parts kits) that it had previously classified as not being "frames or receivers." *See id.* at 24,673. Previously, incomplete frames or receivers had been sent to ATF for classification without the other parts, jigs, templates, or materials that are sold or distributed with the item or kit. *See id.* Thus, the entire kit may not have been presented to the agency when it made its classification, id. at 24,709, despite the fact that these items and materials are relevant to making a proper firearm classification. *Id.* at 24,725. The agency acknowledged this decision and explained its reasoning, which is all that the APA requires. *See infra* n.19. Furthermore, complete weapon parts kits have long been understood to fall within the statutory definition of "firearm," because such kits—standing alone—are "designed to or

may readily be converted to expel a projectile by the action of an explosive[.]"  18 U.S.C. §
921(a)(3)(A); *see* 87 Fed. Reg. at 24,692; 86 Fed. Reg. at 27,726 & nn.39-40 (citing case law).
Thus, with respect to weapon parts kits, the Rule is consistent with ATF's existing legal
interpretation that complete weapon parts kits are "firearms" within the GCA's meaning.

In short, ATF's determination reflects the best interpretation of the GCA.  Plaintiff
nevertheless contends that, based on several considerations, deference under *Chevron, U.S.A.,
Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), does not apply here.  Pl.'s MSJ at
12-14.  However, there is no need to decide whether the Rule is entitled to *Chevron* deference
because it reflects the best interpretation of the GCA.[8]  The Supreme Court has explained that
it is unnecessary to consider deference when an agency rule adopts "not only a reasonable
[position], but the position that [the Court] would adopt even if there were no formal rule and
[the Court] were interpreting the statute from scratch."  *Edelman v. Lynchburg Coll.*, 535 U.S.
106, 114 (2002); *see also Becerra v. Empire Health Found.*, 142 S. Ct. 2354, 2362 (2022) (agency's
"regulation correctly construes the statutory language at issue" because, *inter alia*, "[t]he

---

[8] In any event, Plaintiff's contentions have no merit.  First, *Cargill v. Garland*, 57 F.4th 447 (5th
Cir. 2023), is irrelevant here because that case involved issues related to *Chevron* deference and,
as explained in the text, there is no need here for the Court to determine whether the Rule is
entitled to such deference.  Second, Plaintiff's contention that the Rule is inconsistent with a
statement made in a prior litigation brief is mistaken.  ATF does not regulate individual firearm
parts (with the exception of frames and receivers, and parts of machineguns and silencers),
and that remains true under the Rule.  Third, Plaintiff misplaces its reliance on the rule of
lenity.  Pl.'s MSJ at 14 n.4.  Interpreting the GCA requires the Court first to "consider[] [the]
text, structure, history, and purpose" of the statute.  *Maracich v. Spears*, 570 U.S. 48, 76 (2013)
(citation omitted).  The rule of lenity "only applies if," after exhausting these traditional tools
of statutory construction, "there remains a grievous ambiguity or uncertainty in the statute
such that the Court must simply guess as to what Congress intended."  *Id.* (citation omitted).
And, as explained in the text, the statutory text, context, and structure—as well as longstanding
interpretative history and precedent—all confirm that the Rule properly interprets the statute.

provisions are technical[]" and "[t]he text and context support the agency's reading"). Alternatively, if a rule does not reflect this position, the Court should "consider the agency's interpretation to the extent it is persuasive." *United States v. Garcia*, 707 F. App'x 231, 234 n.5 (5th Cir. 2017) (citing *Baylor Cnty. Hosp. Dist. v. Price*, 850 F.3d 257, 261 (5th Cir. 2017)); *see also Escamilla v. United States*, __ F.4th __, No. 22-2208, 2023 WL 2423342, at *3 (7th Cir. Mar. 9, 2023) (ATF regulation interpreting the GCA "merits some deference in light of the 'specialized experience and broader investigations and information available to the agency[.]'") (quoting *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001)).  Relevant factors under this alternative standard include "how persuasively [ATF] interpreted the statute," which in turn "depends on the thoroughness evident in the agency's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade[.]" *Baylor Cnty. Hosp. Dist.*, 850 F.3d at 261-62 (citation and internal punctuation omitted).  As explained above, the Rule reflects the best interpretation of the statutory language, and has the power to persuade because it is thorough, well-reasoned, substantiated, and logical.  There is thus no need to determine whether *Chevron* deference applies here.

## III. The Rule Is Consistent with the Constitution.

### A. The Rule Is Consistent with the Second Amendment, and Division 80 Does Not Adequately Develop Any Argument to the Contrary.

Division 80 also contends in a cursory fashion that the Rule infringes the exercise of Second Amendment rights.  *See* Pl.'s MSJ at 17-20.  It does not.  To the extent that Division 80 suggests that the Rule's explanation why it does not offend the Second Amendment is inadequate, rendering the Rule arbitrary and capricious, its arguments fail for the reasons set forth below.  *See infra* Section IV.B.  With respect to the substance of the Rule, Division 80

fails to develop any argument that the Rule violates the Second Amendment and therefore has forfeited any such claim. *See, e.g.*, *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 549 (5th Cir. 2015) ("A party waives an issue if he fails to adequately brief it." (quoting *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008))).

In any event, the Rule is consistent with the Second Amendment. As the text of the Second Amendment makes plain, only a restriction that "infringe[s]" the right implicates the Amendment. U.S. Const. amend. II; *see also New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022). As the Supreme Court has repeatedly made clear, the "right" protected in the Second Amendment's text is the right of law-abiding, responsible citizens "to keep and bear arms for self-defense." *Bruen*, 142 S. Ct. at 2125. The Supreme Court has confirmed that nothing in its decisions interpreting the Second Amendment "cast[s] doubt" on "laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *see also Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (same); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion) (same).

Because Plaintiff does not allege, much less submit evidence, that the Rule prevents any qualified individual from making, buying, or possessing firearms, it does not infringe the Second Amendment right and it need not be justified by historical analogy. Indeed, as ATF explained, the statutory licensing, recordkeeping, and background check requirements implicated by the Rule "do not prohibit individuals from assembling or otherwise making their own firearms." 87 Fed. Reg. at 24,676. Nor do those requirements "burden the ability of non-prohibited people to buy, sell, or possess firearms." *Id.* Thus, as the Rule properly

explains, nothing in the Rule or the underlying statute "prevents law-abiding citizens" from exercising the Second Amendment "right to bear arms in public for self-defense." *Bruen*, 142 S. Ct. at 2156. The Rule therefore does not infringe the protected right, and there is no need for further analysis. *See id.* at 2126 (holding that the threshold inquiry is whether "the Second Amendment's plain text covers an individual's conduct").

### B.     The Rule Is Consistent with the First Amendment.

Division 80 asserts that the Rule impermissibly chills protected commercial speech in violation of the First Amendment. *See* Pl.'s MSJ at 20-22. However, nothing in the Rule either prohibits or compels any speech whatsoever. Furthermore, nothing in the Rule regulates the content of any instructions or marketing materials that sellers of components choose to sell or include with any products, or imposes any punishment or prejudice based upon any speech, and therefore there is no burden on protected speech. Rather, the Rule simply provides that ATF will consider, as one of multiple factors, instructions, guides, or marketing materials distributed, possessed, or made available with components as part of the determination of whether the component is readily convertible to a functional frame or receiver.

The Rule provides that:

> When issuing a classification, the Director *may consider* any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient or item or kit.

87 Fed. Reg. at 24,739 (emphasis added).

First and foremost, Division 80's First Amendment claims fail at the threshold because the Rule does not restrict or burden speech at all. To even have standing to bring a First

Amendment claim, a plaintiff must establish that it has engaged in or will engage in speech that is "arguably . . . proscribed" by a government regulation. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Here, the Rule does not "proscribe[]" *any* speech. Nothing in the Rule prohibits or restricts sellers from including certain content in their instructions or marketing materials. Nor does the Rule compel sellers to include any specific content in such materials. The Rule does not impose any punishment on any seller based on the content in such materials. At most, the Rule provides that the content of such materials "may [be] consider[ed]," along with a number of other factors, by ATF in deciding how to classify a component. 87 Fed. Reg. at 24,739. Even in the event that ATF classifies a particular product as a "frame or receiver," and therefore a "firearm" under the GCA, a seller may continue to sell, distribute, or otherwise make available the instructions or marketing materials in question, and it can also continue to sell the component or components subject to the classification decision, consistent with the obligations and requirements of the GCA. Therefore, because the Rule does not regulate or burden speech, Division 80 has failed to even establish standing to bring a First Amendment challenge to the Rule.

Furthermore, instructions or marketing materials sold, distributed, or made available with weapon components are unquestionably commercial speech. And although "commercial speech is protected by the First Amendment, courts give it 'lesser protection . . . than to other constitutionally guaranteed expression.'" *Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 306 (5th Cir. 2017) (quoting *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980)). Moreover, contrary to Division 80's claim that the Rule's provision that ATF "may consider" such materials "constitutes content-based restriction," Pl.'s MSJ at

27

21, nothing in the Rule mandates or prohibits any particular content in marketing materials or instructions sold or provided by sellers. The Supreme Court has emphasized its "rejection of the view that *any* examination of speech or expression inherently triggers heightened First Amendment concern." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1474 (2022). Here, nothing in the Rule requires or restricts any specific content of a seller's instructions, manuals, or marketing materials; it only provides that ATF may examine and consider such materials, along with a number of other factors, in determining whether a product should be classified as a "frame or receiver."

Furthermore, even to the extent the Rule might be considered to have some minor incidental impact on speech, the Rule is clear that it is not motivated by, or targeting, any marketing materials or instructions sold or provided by sellers; rather, the Rule's purpose is expressly to update certain regulatory definitions to "capture the full meaning" of terms used in the GCA and to better effectuate the purposes of that statute. *See* 87 Fed. Reg. at 24,652. The Supreme Court has held that a generally applicable government regulation that is not targeted at expressive activity does not implicate the First Amendment. *See, e.g.*, *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986) (rejecting First Amendment challenge to forced closure of a business that engaged in illegal activities and also sold books and other First Amendment protected speech). As the Court has explained, First Amendment scrutiny "has no relevance to a [governmental action] directed at . . . non-expressive activity[,]" and such a scrutiny test is only applicable if "it was conduct with a significant expressive element that drew the legal remedy in the first place[.]" *Id.* at 706-07. Here, the Rule's amended definition of "frame or

receiver" does not target any expressive conduct, but is instead a regulation of general application clarifying the definition of frame or receiver.

Finally, even in the event this Court were to determine that the Rule did restrict or burden speech in some way, because the speech at issue is commercial speech and any restriction or regulation is content-neutral, the appropriate standard would be intermediate scrutiny, not strict scrutiny. *Reagan Nat'l Advertising v. City of Austin*, 972 F.3d 696, 702 (5th Cir. 2020) (citing *Central Hudson*, 447 U.S. at 561). This intermediate scrutiny is satisfied if the regulation "directly advance[s] the state interest involved" and could not be "served as well by a more limited restriction on commercial speech." *Central Hudson*, 447 U.S. at 564. Here, the portions of the Rule challenged in Division 80's First Amendment claim unquestionably serve an important governmental interest—assisting law enforcement in the increasingly difficult tasks of preventing and solving crimes committed with firearms. *See* 87 Fed. Reg. at 24,652. And, as set forth earlier in this Section, the Rule does not restrict speech at all, and to the extent there is any burden on speech, it would be very minimal given that any seller or manufacturer can continue to sell or distribute marketing materials, guides, or manuals containing whatever otherwise lawful content the seller or manufacturer wishes to include, with no punishment or penalty as a result of the Rule.

Accordingly, because nothing in the Rule restricts, regulates, or punishes the commercial speech of Division 80 or any other person or entity, Division 80's First Amendment claims should be rejected.

### C.     The Definitions Contained in the Rule Are Not Otherwise Unconstitutional.

#### 1.     The Rule Is Not Unconstitutionally Vague.

Division 80's claim that the Rule is unconstitutionally vague also fails as a matter of law.  Under the Fifth Amendment's Due Process Clause, a criminal or quasi-criminal law is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *accord Munn v. City of Ocean Springs*, 763 F.3d 437, 439 (5th Cir. 2014).[9]  "[F]acial vagueness challenges, in particular"—which Division 80 brings here—"are generally 'disfavored for several reasons,' including but not limited to, the fact that facial invalidity claims often 'rest on speculation.'" *Magee v. City of S. Padre Island*, 463 F. App'x 377, 380 (5th Cir. 2012) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)).  "Accordingly, '[i]n determining whether a law is facially invalid, [courts] must be careful not to go beyond the statute's facial requirements and speculate about "hypothetical" or "imaginary" cases.'" *Id.* (quoting *Wash. State Grange*, 552 U.S. at 449-50).  Instead, to establish that a law is unconstitutionally vague on its face, "the complainant must demonstrate that the law is impermissibly vague in all of its applications," *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982), "including its application to the party bringing the vagueness challenge," *United States v. Clark*, 582 F.3d 607, 612-13 (5th Cir. 2009).  Division 80 fails to make that showing.

---

[9] The challenged portions of the Rule are subject to this standard because certain "Federal felony violations . . . can apply to circumstances involving the final rule's requirements."  87 Fed. Reg. at 24,713.

Division 80 is mistaken in contending that the Rule "fails to inform industry and individuals . . . what concurrent purchases may result in a non-firearm item becoming a regulated 'firearm.'"  Pl.'s MSJ at 16.  To the contrary, the Rule provides that for purposes of the GCA, "[t]he terms 'frame' and 'receiver' shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver."  87 Fed. Reg. at 24,739 (codified as amended at 27 C.F.R. § 478.12(c)); *see also id.* at 24,747 (codified as amended at 27 C.F.R. § 479.11) (setting forth a non-exhaustive set of eight factors relevant to the "readily" standard).  As noted, *see supra* page 6, the phrase "may readily be . . . converted" derives from federal statutes.  *See* 18 U.S.C. § 921(a)(3) (GCA); 26 U.S.C. § 5845 (employing similar language in various definitions in the NFA).  The vast majority of courts to consider the question have rejected the argument that provisions of the GCA and the NFA addressing products that may be "readily converted" or "readily restored" to function in a particular manner (or materially identical language in state laws) are unconstitutionally vague.[10]   And the Rule offers further guidance, providing that "any

---

[10] *See, e.g., N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 266 (2d Cir. 2015) (rejecting a void-for-vagueness challenge to the term "can be readily restored or converted" in New York and Connecticut statutes); *United States v. Kelly*, 276 F. App'x 261, 267 (4th Cir. 2007) (same, as to 26 U.S.C. § 5845(b), which includes the term "can be readily restored"); *United States v. Kent*, 175 F.3d 870, 874 (11th Cir. 1999) (same, as to 26 U.S.C. § 5861(d), as applied to an individual who possessed a short-barrel rifle that was disassembled at the time of his arrest but could be "readily restored to fire," *id.* § 5845(c)-(d)); *United States v. Drasen*, 845 F.2d 731, 737-38 (7th Cir. 1988) (same, as to the GCA's "statutory framework . . . as applied to parts kits"; *United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns*, 443 F.2d 463, 464 (2d Cir. 1971) (same, as to the term "may readily be converted" in the GCA); *United States v. Quiroz*, 449 F.2d 583, 585 (9th Cir. 1971) (same); *United States v. Wick*, No. CR 15-30-M-DLC, 2016 WL 10612608, at *3-4 (D. Mont. Mar. 11, 2016) (same, as to the term "can be readily restored" in the NFA); *United States v. M-K Specialties Model M-14 Machinegun Serial*

associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit" may be relevant to the determination whether a partially complete frame or receiver meets that standard. *Id.* at 24,739 (codified as amended at 27 C.F.R. § 478.12(c)). Thus, the Rule clearly sets forth both the standard governing the determination whether a partially complete frame or receiver is a frame or receiver within the meaning of the statute, and the materials relevant to making that determination.

Division 80 next suggests that ATF has "add[ed] to . . . confusion" in an open letter that the agency sent to all federal firearms licensees ("FFLs") in December 2022, addressing the status of certain partially complete pistol frames. Pl.'s MSJ Ex. C, Open Letter to All

---

*Number 1447797*, 424 F. Supp. 2d 862, 872 (N.D. W. Va. 2006) (same), *United States v. Catanzaro*, 368 F. Supp. 450, 454 (D. Conn. 1973) (same, as to the term "may be readily restored" in the NFA); *United States v. Whalen*, 337 F. Supp. 1012, 1018-19 (S.D.N.Y. 1972) (same, as to the NFA as a whole); *cf. United States v. Wojcikiewicz*, 403 F. App'x 483, 486 (11th Cir. 2010) (holding that plaintiff could not "establish that the district court plainly erred in failing to determine that the term 'readily restored' was unconstitutionally vague as applied" to his case); *Roberts v. United States*, No. 04-cr-295, 2007 WL 9754483, at *7 (D.S.C. Oct. 30, 2007) (on an ineffective assistance of counsel claim, holding that the plaintiff had "made no showing whatsoever that 26 U.S.C. § 5845"—which includes the term "may be readily restored"—"is unconstitutionally vague"). *But see Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 538 (6th Cir. 1998) (holding that term "may be readily assembled," as used in a local firearms ordinance, did "not provide sufficient information to enable a person of average intelligence to determine whether a particular combination of parts [was] within the ordinance's coverage").

Courts likewise have rejected vagueness challenges to the term "readily" in the context of criminal statutes other than the GCA and NFA. *See, e.g., Phelps v. Budge*, 188 F. App'x 616, 618 (9th Cir. 2006) (rejecting a vagueness challenge to the term "readily capable of causing substantial bodily harm or death," as used in a criminal statute); *United States v. Felsen*, 648 F.2d 681, 686-87 (10th Cir. 1981) (same, as to "readily attachable equipment items"); *Anderson v. Williams*, No. 10-CV-1916, 2011 WL 2580665, at *4 (D. Nev. June 27, 2011) (same, as to "readily identifiable vehicle").

Federal Firearms Licensees (Dec. 27, 2022), ECF No. 87-7 ("Open Letter"). Division 80 does not explain why it finds the Open Letter "incongru[ous]," Pl.'s MSJ at 17, but to the extent Division 80 implies that it is incongruous that some partially complete frames or receivers that are sold without templates, jigs, or other accompanying materials are firearms, it is mistaken. As the Rule makes clear, the same inquiry applies regardless of which, if any, materials are sold alongside a partially complete frame or receiver: whether the frame or receiver "may readily be completed." 87 Fed. Reg. at 24,739 (codified as amended at 27 C.F.R. § 478.12(c)). Indeed, as an illustrative example, the Rule explains that "[a] partially complete billet or blank of a frame or receiver with one or more template holes drilled or indexed in the correct location is a frame or receiver" is a frame or receiver, without regard to other materials sold alongside it, because "a person with common hand tools may readily complete the billet or blank to function as a frame or receiver." *Id.* (Example 2 to paragraph (c)). The Open Letter likewise explains that the pistol frames at issue can be completed in minutes by a person of novice skill using common tools and/or attachments that are commercially available online, and thus "are, by themselves, 'frames' and 'firearms' as defined in the GCA." Open Letter at 9; *see also id.* at 6-8. The Open Letter is accordingly both clear and consistent with the Rule.

To the extent that Division 80 suggests that the Rule is vague because it does not anticipate and prospectively classify every possible product configuration that could exist now or in the future, Division 80 misunderstands the relevant legal standards. It is well established that the Due Process Clause does not require "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989); *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1214 (2018) (reaffirming that "[m]any perfectly constitutional statutes use imprecise terms").

Rather, the Fifth Circuit has held that "for [a provision] to pass constitutional muster" under the void-for-vagueness doctrine, it need not "delineate the exact actions a [regulated party] would have to take to avoid liability," *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008), or, conversely, "describe every possible permutation" of conduct that would constitute a violation, *United States v. Abbate*, 970 F.3d 601, 604 (5th Cir. 2020) (quoting *United States v. Paul*, 274 F.3d 155, 167 (5th Cir. 2001)). Indeed, "most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).

Accordingly, the Supreme Court and the Fifth Circuit have rejected vagueness challenges to criminal laws imposing standards as open-ended as: "near" a courthouse, *Cox v. Louisiana*, 379 U.S. 559, 568 (1965); "immoral purposes," *Clark*, 582 F.3d at 612; "unreasonably low prices," *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 31-33 (1963); and "unreasonable noise," including noise "which, under the circumstances of time, place, and manner in which it is produced . . . annoys . . . a reasonable person of normal sensitivities," *Munn*, 763 F.3d at 438-39 (emphasis omitted). The Rule is at least as precise with respect to the conduct that it proscribes as the standards upheld in *Cox*, *Clark*, *National Dairy Products Corp.*, and *Munn*.

Moreover, it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines*, 342 U.S. at 340. This is especially true here, where Division 80 operates in a highly regulated

34

industry and the Rule does not proscribe any conduct altogether, but rather imposes reasonable regulations that are not especially costly or onerous, as this Court has already recognized. *See Division 80 v. Garland*, No. 3:22-CV-148, 2022 WL 3648454, at \*3 (S.D. Tex. Aug. 23, 2022) (stating that the cost of an FFL is "certainly not cost-prohibitive for a company that purports to enjoy better than \$200,000 in annual sales").

For the reasons described above, the Rule is sufficiently clear on its face to satisfy the Constitution's due process requirements. Moreover, Division 80's claim that the Rule is unconstitutionally vague lacks merit for an additional reason: the Rule provides for an administrative process through which regulated entities may obtain classifications as to whether their particular products fall within the Rule's scope.[11] The Supreme Court and Fifth Circuit have held that "licensing . . . requirements," such as the Rule, "are afforded considerable deference in the vagueness analysis," in part "because the regulated party may 'have the ability to clarify the meaning of the regulation[s] . . . by resort to an administrative process.'" *United States v. Clinical Leasing Serv., Inc.*, 925 F.2d 120, 122 (5th Cir. 1991) (quoting *Vill. of Hoffman Ests.*, 455 U.S. at 498). The Rule provides precisely such an opportunity, by inviting requests for voluntary classifications as to whether a particular item, such as a partially complete frame or receiver, is a "firearm" within the meaning of the GCA and its regulations. *See* 87 Fed. Reg. at 24,743.[12] Indeed, ATF has already issued more than 40 individual

---

[11] Contrary to Division 80's contention, ATF does not provide for classifications "[i]n lieu of proactively taking the steps to clarify the unconstitutionally vague portions of the Final Rule." Pl.'s MSJ at 15. Rather, for the reasons described above, the Rule is not unconstitutionally vague on its face, even apart from the classification process.

[12] Division 80 states that "the logical result of [the] language" of the Rule describing the classification process "is for the public to be discouraged from even submitting a classification

classifications and provided two Open Letters to the public to explain the application of the Rule's definitions of "frame" and "receiver" to various products.  *See Impact of Final Rule 2021-05F on Partially Complete AR-15/M-16 Type Receivers* (Sept. 27, 2022), www.atf.gov/firearms/docs/open-letter/all-ffls-september-2022-impact-final-rule-2021-05f-partially-complete-ar/download; *Impact of Final Rule 2021-05F on Partially Complete Polymer80, Lone Wolf, and Similar Semiautomatic Pistol Frames* (Dec. 27, 2022), https://www.atf.gov/rules-and-regulations/docs/open-letter/all-ffls-dec2022-open-letter-impact-final-rule-2021-05f/download.  Approximately half of these submissions have been classified as "frames" or "receivers" under the Rule, and approximately half have not.  *See Public Safety Advisory to All Federal Firearms Licensees, and Firearms Parts, Components, and Accessories Manufacturers and Distributers* (Mar. 21, 2023), https://www.atf.gov/firearms/docs/guide/public-safety-advisory-all-federal-firearms-licensees-and-firearm-parts/download, at 4.  To date, ATF has not received a classification request from Division 80, which accordingly should not be heard to complain that "it [is] impossible for manufacturers, distributors, and customers to understand which product designs are regulated by the Final Rule and which are not."  Pl.'s MSJ at 8; *see, e.g.*, *United States v. Arcadipane*, 41 F.3d 1, 5 (1st Cir. 1994) (explaining that the fair notice requirement of the Due Process Clause does not "excuse[]" or "encourage[] deliberate blindness").  For all of these reasons, Defendants are entitled to summary judgment on Division 80's void-for-vagueness claim.

---

request in the first place out of fear of unforeseen criminal liability."  Pl.'s MSJ at 15 n.5.  Although Division 80 does not explain this insinuation, to the extent it refers to the criminal liability that arises from perjury in a classification request, it fails to distinguish the classification process from any other government procedure whereby a party is required to submit accurate information under penalty of perjury.

### 2. The Rule Is Consistent with All Other Constitutional Provisions Raised by Division 80.

Division 80 also asserts a variety of other constitutional claims, all of which lack merit and should be rejected.

Division 80 first claims that the Rule's definition of "privately made firearm" "effectuate[s] the appropriation of personal property by the government without just compensation, which constitutes a regulatory taking in violation of the Fifth Amendment." Pl.'s MSJ at 22. However, as the Supreme Court has repeatedly emphasized, "[o]ur standing decisions make clear that 'standing is not dispensed in gross.' To the contrary, 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Here, Division 80 has made no allegation that it is either the owner of a privately made firearm ("PMF"), or is an FFL that would take any PMF into its inventory. *See* Compl. ¶ 5 ("[Division 80] currently does business *without* a federal firearms license (FFL)…") (emphasis added). Therefore, Division 80 would not be subject to any regulation pursuant to the Rule's definition of "privately made firearm," and it lacks standing to bring this claim.

In any event, PMFs are unquestionably personal property, not real property. And while the Supreme Court has recognized that the Takings Clause can apply to "physical appropriation" of personal property just as it does to physical appropriation of real property, *Horne v. Department of Agriculture*, 576 U.S. 350, 359 (2015), it has also held that there is a "different treatment of real and personal property in a regulatory case[,]" *id.* at 361. In the

case of a regulation potentially altering the acceptable use or value of personal property,[13] the Supreme Court has held that there is an "implied limitation" on the applicability of the Takings Clause because an owner of such personal property "ought to be aware of the possibility that that new regulation might even render his property economically worthless[.]" *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027-28 (1992). Therefore, even if Division 80 had alleged a sufficient Article III injury to give it standing to bring this regulatory taking claim, and even if the Rule's definition of "privately made firearm" somehow affected the use or value of PMFs, personal property cannot be the subject of a valid regulatory takings claim.

Moreover, and in any event, the Rule's definition of "privately made firearm" does *not* prohibit an individual from manufacturing a firearm for personal use and imposes *no* regulations upon owners of PMFs, who may continue to possess and use their PMFs just as they could prior to the Rule. Instead, the Rule's definition requires FFLs to "legibly and conspicuously identify each" PMF that the FFL is taking into inventory within seven days of receipt or acquisition. 87 Fed. Reg. at 24,742. Courts considering takings claims generally consider the three factors articulated by the Supreme Court in *Penn Central*: (1) the economic impact of the regulation on the plaintiff; (2) the interference of the regulation on the plaintiff's investment-backed expectations; and (3) the character of the governmental action. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). Here, any economic impact or interference with investment-backed expectations on FFLs would be minimal to nonexistent,

---

[13] While the Rule contemplates that in some circumstances an FFL may forfeit a PMF to the Government, the Rule also makes clear that such a forfeiture will only occur as a result of the FFL's choice. 87 Fed. Reg. at 24,680. This cannot reasonably be said to be the kind of forceful mandatory seizure or appropriation that courts have recognized as a physical taking of property.

as FFLs can choose not to take PMFs into inventory or, if they do, to apply a serial number to the PMF.  As to the character of the governmental action, courts have consistently rejected takings claims involving government regulations of highly regulated goods pursuant to the police power.  *See, e.g., Kam-Almaz v. United States*, 682 F.3d 1364, 1372 (Fed. Cir. 2012).

Division 80 next makes two related cursory assertions: that the Rule constitutes overreach by the Executive Branch in violation of the separation of powers, Pl.'s MSJ at 23-24, and that the Rule violates the non-delegation doctrine, *id.* at 24.  However, this is simply an attempt to recharacterize Division 80's statutory claim as a constitutional claim, as the gravamen of these arguments is the assertion that ATF acted in excess of the authority delegated to it by Congress.  Neither argument has any merit, and both should be rejected.

Division 80 argues that the Rule constitutes "revis[ing] clear statutory terms," *id.* at 23 (quoting *Util. Air Reg. Grp. v. EPA*, 573 U.S. 302, 327 (2014)), and therefore impermissibly impedes upon the authority of the Legislative Branch.  However, as explained in more detail above, *see supra* Section II, the Rule implements, rather than usurps, the GCA and NFA.  The definitions challenged by Division 80 were all promulgated pursuant to ATF's statutory authority under the GCA and NFA.

Division 80's non-delegation doctrine claim fares no better.  The Supreme Court recently reaffirmed—as it has, "time and again"—"that a statutory delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle'" to direct the exercise of its delegated authority.  *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality opinion) (citation omitted).  Indeed, "[o]nly twice in this country's history[,]" both times in 1935, has the Court "found a delegation excessive," and then only "because 'Congress had failed to

articulate *any* policy or standard' to confine discretion." *Id.* at 2129 (citation omitted); *see A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935). Meanwhile, the Court has rejected challenges to delegations as broad as the authority to set "fair and equitable" prices, *Yakus v. United States,* 321 U.S. 414, 427 (1944); to determine "just and reasonable" rates, *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 600 (1944); to regulate broadcast licensing as "public interest, convenience, or necessity" require, *National Broadcasting Co. v. United States,* 319 U.S. 190, 225-26 (1943); to allow railroad acquisitions in the "public interest," *New York Central Securities Corp. v. United States*, 287 U.S. 12, 24 (1932); and to issue any air quality standards "requisite to protect the public health[,]" *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 472 (2001) (citation omitted). Here, Congress expressly delegated to the Department of Justice and ATF the authority to prescribe "rules and regulations as are necessary to carry out the provisions of" the GCA (which also amended the NFA). *See supra* n.3. This delegation includes the authority to promulgate regulations and rules implementing and interpreting the GCA, 18 U.S.C. § 926(a), to specify the information and period by which firearms are required to be marked pursuant to the GCA and NFA, 18 U.S.C. § 923(i), 26 U.S.C. § 5842(a)-(b) (to include the frames or receivers of automatic weapons), and to specify the precise period and form in which Federal firearm licensee records required by the GCA are maintained, 18 U.S.C. § 923(g)(1)-(2). These delegations are more specific than many upheld by the Supreme Court.

Finally, this Court should also reject Division 80's single-sentence assertion that the Rule violates the Commerce Clause. Pl.'s MSJ at 25. As an initial matter, such a vague, conclusory allegation falls well short of Rule 8's requirement that a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief[.]" *See Bacon v. NCO Fin. Sys., Inc.*, No. 12-646, 2012 WL 1899978, at *1-2 (N.D. Tex. Apr. 23, 2012) (dismissing a claim that merely asserted a legal violation as "woefully insufficient" because it was "wholly devoid of any factual allegations"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (noting that Rule 8(a)(2) requires that the factual allegations in a complaint "possess enough heft" to show entitlement to relief).

Regardless, however, the Rule's definition of PMF does not exceed the limits placed on the federal government by the Commerce Clause. Courts have consistently recognized that Congress has authority to regulate firearms even if the firearms are manufactured and used within a single state. *See, e.g., United States v. Kirk*, 105 F.3d 997, 1004 (5th Cir. 1997) (per curiam) (holding that federal regulation of machine guns does not violate the Commerce Clause because "it is hardly irrational to conclude that meaningful regulation of their use in lines of interstate commerce requires regulation of this intrastate possession"); *see also Hollis v. Lynch*, 121 F. Supp. 3d 617, 639-40 (N.D. Tex. 2015) (noting the "well-established precedent" that Congressional regulation of firearms does not violate the Commerce Clause because "even a purely local activity can be regulated if it is part of a greater 'economic class of activities' having a substantial effect on interstate commerce") (citing *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005)); *United States v. Stewart*, 451 F.3d 1071, 1073-78 (9th Cir. 2006) (possession of homemade machine guns substantially affects interstate commerce). Similarly, here, even if the component parts of a PMF originate from within the single state in which the PMF is assembled and operated, the PMF has an aggregate effect on the well-established interstate

market of firearms and firearm components, such that federal regulation of PMFs is constitutionally valid under the Commerce Clause.

Accordingly, because nothing in the Rule violates any of the constitutional provisions cited by Division 80 in its Complaint, these claims should be rejected and summary judgment should be granted for Defendants on these causes of action.

## IV.   The Rule Complies with the APA.

### A.   The Rule Is a Logical Outgrowth of the Notice.

The Rule is a logical outgrowth of the Notice.  A notice of proposed rulemaking is "not required to specifically identify every precise proposal which the agency might ultimately adopt" but instead "satisfie[s] the requisite standard by fairly apprising interested persons of the subjects and issues the agency was considering."  *Huawei Techs. USA v. FCC*, 2 F.4th 421, 448 (5th Cir. 2021) (citation and alterations omitted); *see also ConocoPhillips Co. v. EPA*, 612 F.3d 822, 834 (5th Cir. 2010) ("[C]ourts must proceed with caution before deeming a Final Rule too attenuated from the Proposed Rule, lest we supplant the agency's role in the nation's regulatory scheme.").  The Notice satisfies this standard with respect to ATF's regulatory definition of "frame or receiver."  *See Morehouse*, 2022 WL 3597299, at *4 ("Without question, the [Notice] was sufficiently descriptive that the ATF was going to redefine 'frame or receiver,' and it allowed interested parties to offer informed criticism and comment.").

Plaintiff fails to demonstrate that the Rule is not a logical outgrowth of the Notice. Pl.'s MSJ at 25-27.  Initially, it was readily apparent to commenters that the final rule might adopt a different definition of "frame or receiver," as ATF "specifically request[ed] comments on the feasibility of implementing" the Notice's definition, 86 Fed. Reg. at 27,740, and many

commenters submitted proposed alternative definitions.[14]  And as *Morehouse* held in rejecting

a similar challenge, the Rule satisfies the logical outgrowth standard with respect to ATF's

narrowed regulatory definition of "frame or receiver."  The Notice "expressly stated [] ATF's

intent to update and modernize the definition of 'frame or receiver' because 'most firearms

currently in circulation in the United States do not have a specific part that expressly falls

within the current 'frame or receiver' regulatory definitions.'"  *Morehouse*, 2022 WL 3597299,

at *4 (quoting 86 Fed. Reg. at 27,727).  Unlike the prior definition that was "rigidly tied to

three specific fire control components," the proposed definition was "intended to be general

enough to encompass changes in technology and parts terminology."  86 Fed. Reg. at 27,727.

Thus, in the Notice, ATF defined "frame or receiver" to mean a firearm part "that

provides housing or a structure designed to hold or integrate *any* fire control component."  *Id.*

(emphasis added).  In turn, the Notice defined "fire control component" as "a component

necessary for the firearm to initiate, complete, or continue the firing sequence, including," but

---

[14] *See* 87 Fed. Reg. at 24,693.  For example, Sig Sauer, Inc. suggested that the term "firearm frame or receiver" be defined as either: (1) "the component of the firearm which provides a housing for the component responsible for constraining the energized component of the firearm (i.e., the sear or equivalent thereof)"; (2) "the component of the firearm which provides a housing for the component which the operator interacts with to initiate the firing sequence of the firearm (i.e., the triggering mechanism, or the equivalent thereof)"; or (3) "the component of the firearm which incorporates or provides a housing for the component which interacts with the barrel to form the chamber of the firearm."  Comment by Sig Sauer, Inc. at 10 (attached as Ex. 4).  Others suggested: "the part of a firearm that provides housing for the hammer, bolt or breechblock, firing mechanism, or at its forward portion receives the barrel," "[t]he basic unit of a firearm which houses the firing and breech mechanism and to which the barrel and stock are assembled," and a point system in which the part that had the most points would be the "frame or receiver" (*e.g.*, the fire control group would be three points, the hammer would be one point, and the striker would be one point).  *See* Comment by Nathan Quarantillo at 20; Comment by Beretta U.S.A. Corp., Benelli U.S.A. Corp. and Stoeger Industries, Inc. at 1; Comment by Scott Lipiec at 11 (attached as Ex. 5-7).

not limited to, such different types of components as a "[h]ammer, bolt, bolt carrier, breechblock, cylinder, trigger mechanism, firing pin, striker, or slide rails." *Id.* at 27,741; *see also id.* at 27,727. "And after reviewing and considering the over 290,000 comments offered by the public, . . . ATF *narrowed* its definition of 'frame and receiver.'" *Morehouse*, 2022 WL 3597299, at *4. Specifically, some commenters explained that the proposed definition was too broad and would lead to confusion because it potentially included more than one housing for any given weapon; thus, a weapon could have multiple "frames" or "receivers" all of which would be subject to regulation. *See, e.g.,* 87 Fed. Reg. at 24,692. Thus, "[a]fter carefully considering the numerous comments submitted on this issue," ATF agreed that defining "frame or receiver" "to encompass only one single part of a given weapon would greatly reduce the possibility that a modified weapon might have more than one serial number," a possibility that "would make it more difficult and costly for licensees to mark firearms and maintain associated records, and for law enforcement to trace firearms used in crime." *Id.* at 24,683.

The Rule thus reflects that there is only a single "frame or receiver"—*i.e.*, a single housing for a single fire control component—of a given weapon. Agreeing with the comment of at least one major firearms manufacturer, *see id.* at 24,693, the Rule defines "frame" as the part of a handgun that provides housing for the component designed to hold back the hammer, striker, bolt, or similar primary energized component before the firing sequence is initiated. *See id.* at 24,735. This component—also known as the "sear"—is clearly a "fire control component," as the Notice proposed to define that latter term, because the sear is

necessary for the handgun to complete the firing sequence.[15]  *See* 86 Fed. Reg. at 27,727.
Similarly, the Rule defines "receiver" as the part of a long gun or other projectile weapon that
provides housing for the primary component designed to block or seal the breech before the
firing sequence is initiated.  87 Fed. Reg. at 24,735.  This component—known as the bolt or
breechblock—is a "fire control component" under the Notice's proposed definition because
it is necessary to "complete[] or continue the firing sequence;" indeed, the Notice's
nonexclusive list of "fire control components" included a "bolt" and a "breechblock."  86
Fed. Reg. at 27,741; *see also id.* at 27,727.  The Notice thus made clear ATF's proposal to include
in its updated definition of "frame or receiver" any firearm part that provides housing for *any*
fire control component of any projectile weapon.[16]  In turn, the Rule defined a "frame" or
"receiver" more narrowly to mean only a subset of this category—*viz.*, the part of a handgun
that provides housing for the sear (the "frame"), and the part of a long gun or other projectile
weapon that provides housing for the bolt or breechblock (the "receiver").  The housings
identified in the Rule were thus included in the Notice's proposed definition of "frame or
receiver," and the Rule is a logical outgrowth of the Notice.  *See Ariz. Pub. Serv. Co. v. EPA*,
211 F.3d 1280, 1299-1300 (D.C. Cir. 2000) (notice sufficient where agency first proposed that

---

[15] When a handgun's sear is released, it causes the hammer or striker to hit the primer on the
cartridge in the chamber, which completes the handgun's firing sequence.  In an automatic
weapon, the sear is also necessary to continue the firing sequence.  Further, after a long gun's
firing cycle has been initiated, a bolt or breechblock (or variant thereof) is necessary to seal
gases in the chamber to prevent the gases from escaping other than through the barrel.  Thus,
the bolt or breechblock is necessary to complete or continue the long gun's firing sequence.

[16] Both the Notice and the Rule also expressly stated that the proposed definition of "frame
or receiver" would not have been limited to those particular fire control components.  86 Fed.
Reg. 27,727 & n.46; 87 Fed. Reg. 24,662 & n.45.

Indian tribes be required to meet the same requirements as States with respect to judicial review of certain actions, but the final rule exempted tribes from some of those requirements); *cf. Long Island Care at Home v. Coke*, 551 U.S. 158, 174-75 (2007) (final rule exempting an entire category of workers from coverage under an employment statute was a logical outgrowth of a proposed rule exempting only a subset of that category).

The Rule's treatment of "privately made firearms" and "gunsmiths" are also logical outgrowths of the Notice. *Contra* Pl.'s MSJ at 26 n.11. The Notice defined "[p]rivately made firearm," and the Rule adopted that definition with few changes. *Compare* 86 Fed. Reg. at 27,746-47 *with* 87 Fed. Reg. at 24,735. The Rule's provision entitled "[p]rivately made firearms marked by nonlicensees" defines no terms; it merely states that licensees may adopt a unique identification number previously placed on a privately made firearm by a non-licensee. 87 Fed. Reg. at 24,743. Additionally, the Notice defined "gunsmith" as, in relevant part, a person who "as a service performed on existing firearms not for sale or distribution by a licensee, devotes time, attention, and labor to . . . identifying firearms in accordance with this chapter," 86 Fed. Reg. at 27,741, and the Rule narrowed this definition to a person who "as a service performed on existing firearms not for sale or distribution, devotes time, attention, and labor to. . . placing marks of identification on privately made firearms in accordance with this part. 87 Fed. Reg. at 24,734 (codified as amended at 27 C.F.R. § 478.11(d)).

Inherent in Plaintiff's logical-outgrowth challenge to the Rule is its apparent belief that any differences between a proposed rule and a final rule are impermissible. But that is not the law. "The whole rationale of notice and comment rests on the expectation that the final rules will be somewhat different—and improved—from the rules originally proposed by the

agency." *City of Stoughton v. EPA*, 858 F.2d 747, 753 (D.C. Cir. 1988) (citation omitted).  It is not "uncommon for a final rule to contain new provisions that are 'substantially different' from those in the proposed rule."  *Nat'l Rest. Ass'n v. Solis*, 870 F. Supp. 2d 42, 50 (D.D.C. 2012) (citation omitted).  "A standard that required otherwise would obligate an agency to engage in successive rounds of notice and comment any time a final rule differs from what it proposed, greatly impeding and delaying an agency's ability to address a problem." *Id.* (citation omitted).[17]  Especially in light of the fact that the Notice "specifically request[ed] comments on the feasibility of implementing the [proposed] definition of firearm 'frame or receiver,'" 86 Fed. Reg. at 27,740, the "possibility" that the agency might modify this definition in the Rule was "reasonably foreseeable."  *Long Island Care at Home*, 551 U.S. at 175.

"It is difficult to conclude, under these facts, that the [Rule] is not a 'logical outgrowth' of the [Notice].  Indeed, this appears to present a rather textbook example of how the administrative rulemaking process must proceed under the APA."  *Morehouse*, 2022 WL

---

[17] Nor does case law cited by Plaintiff suggest otherwise.  Unlike Plaintiff, the petitioners in *Texas Association of Manufacturers v. U.S. Consumer Product Safety Commission*, 989 F.3d 368 (5th Cir. 2021), did "not object to a substantive change in the text of the Proposed Rule and the Final Rule, but to the change in the justification for the Proposed Rule and the justification for the Final Rule."  *Id.* at 382.  No such change in justification occurred here.  And the proposed rule in *National Lifeline Association v. FCC*, 921 F.3d 1102 (D.C. Cir. 2019), limited the availability of an established low-income subsidy based on an Agriculture Department rule excluding towns with populations greater than 10,000, but the final rule instead limited availability based on the provisions of a different agency's program that would exclude "some small towns of significantly less than 25,000 or even 10,000 people (despite contrary terms in the proposed rule)."  *Id.* at 1105-06, 1116.  The D.C. Circuit held that the proposed rule's failure to provide searchable maps that "were necessary to appreciate that even some towns with populations under 10,000 people (contrary to the Commission's original proposal of excluding towns above 10,000 people) would be excluded" from the subsidy rendered the final rule "inadequate to enable sufficient comment on the proposed rule."  *Id.* at 1116.  *National Lifeline Association* is thus far afield from this case.

3597299, at *4.  "Without question, the [Notice] was sufficiently descriptive that . . . ATF was going to redefine 'frame or receiver,' and it allowed interested parties to offer informed criticism and comment."  *Id.*  Moreover, "[i]n most cases, if the agency alters its course in response to the comments it receives, little purpose would be served by a second round of comment."  *Ariz. Pub. Serv. Co.*, 211 F.3d at 1299 (citation omitted).  That is true here also. "Here, the Plaintiff[] had an opportunity to offer comments on the proposed definitions," and "allowing Plaintiff[] a new round of notice and comment would serve little purpose." *Morehouse*, 2022 WL 3597299, at *4.

In any event, even if the Rule's definitions of "frame" and "receiver" were not a logical outgrowth of the Notice, any error would be harmless.  Under the APA, a plaintiff "must demonstrate that the agency's violation" has "resulted in 'prejudice.'"  *Am. Coke & Coal Chems. Inst. v. EPA*, 452 F.3d 930, 939 (D.C. Cir. 2006) (quoting 5 U.S.C. § 706(2)).  Where, as here, the agency has conducted notice and comment, a litigant claiming that notice was inadequate must show that "had proper notice been provided, [it] would have submitted additional, different comments that could have invalidated the [agency's] rationale."  *City of Waukesha v. EPA*, 320 F.3d 228, 246 (D.C. Cir. 2003).  But Plaintiff fails to identify any specific comment it was allegedly prevented from submitting, much less any concrete harm traceable to any changes it cites.  Because the proposed rule "fairly appris[ed] interested persons of the subjects and issues the agency [was] considering," the Rule is a logical outgrowth of the Notice.  *Huawei Techs. USA*, 2 F.4th at 448 (citation omitted).

48

**B.** **The Rule Is Not Arbitrary and Capricious.**

Plaintiff's arbitrary-and-capricious claims likewise fail.  The arbitrary and capricious

standard is "narrow and highly deferential."  *Sierra Club v. U.S. Dep't of Interior*, 990 F.3d 909,

913 (5th Cir. 2021) (citation omitted).  The court's "task is merely to ask whether the agency

considered the relevant facts and articulated a satisfactory explanation for its decision."  *Amin*

*v. Mayorkas*, 24 F.4th 383, 393 (5th Cir. 2022).  "[A] court is not to substitute its judgment for

that of the agency," *State Farm*, 463 U.S. at 43 (citation omitted), and must "uphold an agency's

action if its reasons and policy choices satisfy minimum standards of rationality," *10 Ring*

*Precision*, 722 F.3d at 723 (citation and internal punctuation omitted).  A reviewing court starts

from "a presumption that the agency's decision is valid, and the plaintiff has the burden to

overcome that presumption by showing that the decision was erroneous."  *Texas Clinical Labs.*

*v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010).  Plaintiff has failed to overcome this presumption

of validity because the Rule is rational.

Plaintiff appears to suggest that ATF did not adequately explain policy changes relating

to individual firearm parts and to weapon parts kits, Pl.'s MSJ at 28, and to partially complete

frames and receivers, *id.* at 29.  As to each of these three product categories, however, the Rule

either does not change ATF's policy or adequately explains the reasons for any change.  ATF

does not regulate individual, stand-alone firearm parts, with the exception of frames and

receivers, and parts of machineguns and silencers.  That remains true under the Rule.  By

contrast, ATF always has recognized that a weapon parts kit, standing alone—essentially a

disassembled firearm—may fall within the GCA's statutory definition of a "firearm," where it

"is designed to or may readily be converted to expel a projectile by the action of an explosive."

49

18 U.S.C. § 921(a)(3)(A); *see* 87 Fed. Reg. at 24,662 & n.44, 24,692; 86 Fed. Reg. at 27,726 & nn.39-40 (citing case law confirming this interpretation).   The Rule merely adds express language confirming and codifying this interpretation.  *See* 87 Fed. Reg. at 24,662, 24,692.  To the extent that ATF was required to explain this codification of existing policy, its explanation—which relied on both case law and the plain meaning of the statutory text—was more than adequate.  *See id.* at 24,684.

With respect to partially complete frames and receivers, the Rule is consistent with ATF's longstanding fact-specific approach.  There are no statutory definitions for the term "frame or receiver" in the GCA.  Therefore, the crucial question is at what point a mere component or foundation of a component, such as a piece of metal or plastic, becomes a "frame or receiver" that is regulated as a firearm.  For many years, ATF has determined that a component becomes a "frame or receiver" when it reaches a "critical stage of manufacture," which is the point at which it is "brought to a stage of completeness that will allow it to accept the firearm components [that] it is designed for, using basic tools in a reasonable amount of time."  *See, e.g.*, ATF Letter to Private Counsel #303304, at 3-4 (Mar. 20, 2015) (attached as Ex. 8).

Thus, ATF has always classified "some unfinished receivers [as] firearms because of the ease with which they can be made functional"—a standard which "is largely determined by which machining operations still needed to be performed."  87 Fed. Reg. at 24,668.[18]  It

---

[18] Indeed, Plaintiff's complaint cites an ATF webpage illustrating that a receiver with only a "partially machined fire-control cavity" was classified as a firearm under ATF's prior regulations, although it could not function as a receiver in its existing form.  *See Are "80%" or "unfinished" receivers illegal?*, ATF, *available at*  https://www.atf.gov/firearms/qa/are-

likewise remains true that "a partially complete frame or receiver alone is not a frame or receiver if it still requires performance of certain machining operations." *Id.* at 24,668. Under the Rule, the issue is whether a partially complete frame or receiver may "readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver[.]" *Id.* at 24,739. Accordingly, under the Rule, the "billet or blank of an AR-15 variant receiver without critical interior areas having been indexed, machined, or formed that is not sold, distributed, or possessed with instructions, jigs, templates, equipment, or tools such that it may readily be completed is not a receiver." 87 Fed. Reg. at 24,652 (codified as amended at 27 C.F.R. § 478.12(c)) (Example 4 to paragraph (c)). The Rule clarifies that ATF will consider "any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available" with an unfinished frame or receiver to determine whether the component has reached the "critical stage of manufacture." *Id.* at 24,678. Plaintiff does not argue that this change was inadequately supported.[19] The Rule thus retains some aspects of ATF's existing policy with respect to

---

%E2%80%9C80%E2%80%9D-or-%E2%80%9Cunfinished%E2%80%9D-receivers-illegal; Compl. ¶ 33, ECF No. 1.

[19] Moreover, the change satisfies all three requirements for a regulatory change: it is consistent with the GCA, which vests ATF with the discretion to define the statutory term "frame or receiver," *see supra* Statutory Background; ATF acknowledged that it was changing position; and ATF explained the reason for the change. *See Handley v. Chapman*, 587 F.3d 273, 282 (5th Cir. 2009). As for the reason for the change, ATF has long maintained that a partially complete frame or receiver is a "frame or receiver" for purposes of the GCA when it is sold "indexed," or marked with the locations for drilling or milling the holes or cavities necessary to initiate, complete, or continue the firing cycle. *See* 87 Fed. Reg. at 24,668; ATF Classification Letter to Chris Coad, Ultra-Tech, Inc. (May 29, 2009) at 1-2 (attached as Ex. 9); ATF Classification Letter to Jason Davis, Davis & Associates at 2-6 (attached as Ex. 10). Prior to the Rule, however, ATF did not examine templates, jigs, or other items and materials made available with a partially complete frame or receiver. *See* 87 Fed. Reg. at 24,668. Because "the

partially complete frames and receivers, while making changes that the Rule acknowledges and explains.

Division 80 also errs in contending that the Rule is arbitrary and capricious because, in its view, it did not follow the analysis required by the Supreme Court in *Bruen*. *See* Pl.'s MSJ at 18-20. That argument is unavailing. As explained above, *see supra* Section III.A, ATF correctly concluded that the Rule is consistent with the Second Amendment. Moreover, the APA requires courts to take account of the "rule of prejudicial error." 5 U.S.C. § 706. Under that rule, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009); *see also Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810, 818-19 (5th Cir. 2018) (rejecting challenge to administrative action because the challenger had failed to show that it was prejudiced by the claimed error). Thus, to the extent that Division 80 urges that the Rule is invalid because it cites and applies case law from federal courts employing a means-end scrutiny analysis that *Bruen* rejected, that argument has no merit. Because ATF correctly explained that the Rule does not infringe Second Amendment rights, the inclusion of additional analysis reaching the same result under a different test cannot be prejudicial. And given that the Second Amendment question is a legal one, its resolution does not implicate the sort of policy considerations and agency discretion that the agency must resolve in the first instance. In any event, *Bruen* was issued after the Rule's promulgation, and under APA review, "it is well established that reviewing courts generally should, in evaluating agency action, avoid

---

aggregation of a template or jig with a partially complete frame or receiver can serve the same purpose as indexing," the Rule now requires consideration of such materials. *Id.* The change thus increases the consistency and accuracy of ATF's classifications. *See id.*

considering evidence that was not before the agency when it issued its final decision. Agency actions should generally be reviewed in light of the evidence before the agency at the time, and not with the benefit of hindsight." *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 630 n.8 (5th Cir. 2001) (internal citations omitted); *see also SIH Partners LLLP v. Comm'r of Internal Revenue*, 923 F.3d 296, 301 (3d Cir. 2019) (arbitrary and capricious review does not permit courts to apply "hindsight derived from matters occurring after the[] adoption" of the challenged agency action). The Rule thus adequately demonstrates why it does not implicate the Second Amendment.

Somewhat bizarrely, Plaintiff also challenges the Rule as arbitrary and capricious for having rejected a proposal that Plaintiff disagrees with. Pl.'s MSJ at 29-30. Specifically, the Notice suggested the possibility that for purposes of licensing, serialization, and recordkeeping, a firearm could be deemed to have more than one frame or receiver, but the Rule rejected this possibility and instead reflects that there is only a single "frame or receiver"—*i.e.*, a single housing for a single fire control component—of a given weapon. *Compare* 86 Fed. Reg. at 27,734 *with* 87 Fed. Reg. at 24,727, 24,735. Plaintiff agrees with the Rule's conclusion that a given weapon has only a single "frame or receiver," but nevertheless challenges the proposal made in the Notice—which was rejected—as arbitrary and capricious. However, Plaintiff cites no authority suggesting that an arbitrary-and-capricious claim may be maintained with respect to a rejected proposal. And to the extent that Plaintiff suggests that the agency could hypothetically re-examine this rejected proposal, it asks this Court for an impermissible advisory opinion. *See In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 205 (5th

Cir. 2018) ("The prohibition of advisory opinions is a constitutional limit on the power of the courts.").

Ultimately, Plaintiff disagrees with the policy judgments made by ATF in promulgating the Rule. But such disagreement is not a basis for finding the Rule arbitrary and capricious. Plaintiff's claims thus do not succeed under the "highly deferential" arbitrary and capricious standard.

## V. Any Relief Ordered Should Be Appropriately Limited.

### A. Any Relief Should Be Narrowly Tailored.

#### 1. Section 706(2) Does Not Authorize the Universal Vacatur Urged by Division 80.

For the reasons set forth above, Division 80 is not entitled to relief. In any event, to the extent that Division 80 seeks universal vacatur of the Rule, *see* Pl.'s MSJ at 30 & n.13, Section 706(2) of the APA does not provide for such relief. As an initial matter, the ordinary meaning of "set aside," 5 U.S.C. § 706(2), is to disregard, not to nullify. *See, e.g., Webster's New International Dictionary of the English Language* 2291 (2d ed. 1958) (defining "set aside" as: (a) "[t]o put to one side; discard; dismiss," and (b) "[t]o reject from consideration; overrule" (emphasis omitted)). This understanding is consistent with limits on judicial review of acts of the other branches of government. For example, in the context of reviewing statutes for constitutionality, courts "have no power *per se* to review and annul acts of Congress on the ground that they are unconstitutional." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). Instead, judicial review "amounts to little more than the negative power to disregard an unconstitutional enactment." *Id.* Thus, when the APA was enacted, it was well understood that courts' "setting aside" unconstitutional statutes referred to disregarding such statutes in

deciding the cases before them, not vacating the statutes. *See, e.g.*, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 87 (1938); Act of Aug. 24, 1937, ch. 754, § 3, 50 Stat. 752-753; *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 432 (1934); *Mallinckrodt Chem. Works v. Missouri ex rel. Jones*, 238 U.S. 41, 54 (1915).

The structure of the APA confirms in at least three respects that Section 706(2)'s instruction to "set aside" deficient agency action does not provide for universal vacatur as a remedy.  First, whereas Section 706(2) supplies a rule of decision directing courts to disregard unlawful "agency actions, findings, and conclusions," 5 U.S.C. § 706(2), Section 703 pertains to remedies.  And absent a "special statutory review proceeding" authorizing a court to act directly upon an agency order, Section 703 remits plaintiffs to traditional remedies such as "declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus." *Id.* § 703.  It does not speak of vacatur.

Second, Section 706(2) requires a court to "hold unlawful and set aside" not only "agency action," but also "findings[] and conclusions." *Id.* § 706(2).  It would make little sense for a court to vacate an agency's "findings" and "conclusions."  But it is entirely sensible for a court to disregard unfounded agency findings and conclusions in resolving the case before it.

Third, because Section 706 provides the substantive standard for holding agency action "unlawful," *id.*, it must be applicable in all forms of action where Section 706 applies, including "actions for declaratory judgments or [on] writs of prohibitory or mandatory injunction or habeas corpus," as well as "in civil or criminal proceedings for judicial enforcement," *id.* § 703. No one would suggest that a court hearing a habeas petition or an enforcement action could

vacate a regulation.  But Section 706(2) fits naturally in those contexts if it is understood as an instruction to disregard unlawful agency actions, conclusions, and findings.

Moreover, Congress enacted the APA against a background understanding that statutory remedies should be construed in accordance with "traditions of equity practice." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).  Traditionally, remedies "operate with respect to specific parties," not "on legal rules in the abstract." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1486 (2018)).  By contrast, universal vacatur violates "the bedrock practice of case-by-case judgments with respect to the parties in each case." *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, C.J., concurring).  There is no basis to conclude that Congress contemplated creating such extraordinary remedial power when it enacted the APA.  Indeed, both committee reports characterize Section 706(2) as authorizing a court to hold agency action unlawful, without mentioning the phrase "set aside."  *See* S. Rep. No. 79-752, at 27 (1945) (attached as Ex. 11); H.R. Rep. No. 79-1980, at 44 (1946) (attached as Ex. 12).  This silence further confirms that Congress did not intend for that phrase to establish the novel and far-reaching remedy of universal vacatur.  Thus, any vacatur of the Rule should be limited to Division 80.

## 2.    In Any Event, Remand Without Vacatur Is the Appropriate Remedy for Any Procedural Violation.

In any event, even if vacatur were an available remedy, it would not be the appropriate form of relief in the event that Division 80 were to succeed on any of its procedural claims. As the Fifth Circuit has held repeatedly, "when 'an agency decision is not sustainable on the basis of the administrative record, then "the matter should be remanded to the agency for further consideration.""'  *O'Reilly v. U.S. Army Corps of Eng'rs*, 477 F.3d 225, 238 (5th Cir. 2007)

(brackets omitted) (quoting *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 905 (5th Cir. 1983)).  That is because, "when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so," "[r]emand, not vacatur, is generally appropriate." *Tex. Ass'n of Mfrs.*, 989 F.3d at 389 (citing *Cent. & Sw. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000)).

With respect to many of Division 80's claims, even if the Court were to hold that ATF had not adequately supported the Rule on the current record, there would be at least a serious possibility that the agency could do so on remand.  The defects that Division 80 purports to find in the Rule—including its policy shift, Second Amendment-related, and logical outgrowth claims—are precisely those amenable to correction on remand, through additional articulation of the agency's reasons for acting and/or an additional round of notice and comment.  *Cf. id.* 389-90 (remanding without vacatur where the agency had not properly employed notice-and-comment procedures and had failed to consider relevant factors).

In addition to the likelihood of correction on remand, courts in this Circuit may also consider the disruptive consequences of vacatur in determining the appropriate remedy for an APA violation.  *See, e.g., Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *cert. granted*, 142 S. Ct. 1098 (2022), *and rev'd and remanded on other grounds*, 142 S. Ct. 2528 (2022); *Cent. & S. W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000); *cf. Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993).  Here, the disruptive consequences of vacatur would be immense.  As ATF explained in the Rule, the recent "proliferation of untraceable firearms severely undermines" law enforcement's ability to engage in the "integral" process of "determin[ing] where, by whom, or when" a firearm used

in a crime was manufactured, and "to whom [it was] sold or otherwise disposed."  87 Fed.

Reg. at 24,656, 24,659.  By updating ATF's regulations to reflect current technology, the Rule

"increase[s] public safety by, among other things, preventing prohibited persons from

acquiring firearms and allowing law enforcement to trace firearms involved in crime."  *Id.* at

24,654; *see, e.g.*, *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 677 (1989) (noting that

the government has a "compelling interest[]" in protecting "public safety").  Vacating the Rule

thus would facilitate the further proliferation of untraceable weapons, which could not be

reversed in the event that ATF cured any defects in the Rule on remand.

### B.    In the Alternative, Any Vacatur of the Rule Should Be Narrowly Tailored.

Alternatively, any vacatur should be limited to the relevant provision or provisions of

the Rule.  With respect to severability, the Rule provides:

> in the event any provision of this rule, an amendment or revision made by this
> rule, or the application of such provision or amendment or revision to any
> person or circumstance is held to be invalid or unenforceable by its terms, the
> remainder of this rule, the amendments or revisions made by this rule, and the
> application of the provisions of such rule to any person or circumstance shall
> not be affected and shall be construed so as to give them the maximum effect
> permitted by law.

87 Fed. Reg. at 24,730.  The Court should give effect to this clause and, in the event it were to

decide that vacatur of any provision of the Rule was warranted, tailor such relief narrowly such

that the remainder of the Rule remains in effect.  *See, e.g.*, *Sw. Elec. Power Co. v. EPA*, 920 F.3d

999, 1033 (5th Cir. 2019) (vacating only "unlawful . . . portions of [an agency] rule"); *cf. Free

Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010) (noting that, "'when

confronting a constitutional flaw in a statute,' . . . the 'normal rule' is 'that partial, rather than

facial, invalidation is the required course'") (citations omitted).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court enter summary judgment for Defendants, and deny Division 80's motion for summary judgment.

DATED: March 24, 2023                         Respectfully submitted,

                                              BRIAN M. BOYNTON
                                              Principal   Deputy   Assistant   Attorney
                                              General

                                              ALEXANDER K. HAAS
                                              Director, Federal Programs Branch

                                              LESLEY FARBY
                                              Assistant   Director,   Federal   Programs
                                              Branch

                                              */s/ Daniel Riess*
                                              DANIEL RIESS
                                              TAISA GOODNATURE
                                              Trial Attorneys
                                              Civil Division, Federal Programs Branch
                                              U.S. Department of Justice
                                              1100 L Street, NW
                                              Washington, DC 20005
                                              Phone:          (202) 353-3098
                                              Email: Daniel.Riess@usdoj.gov

                                              *Attorneys for Defendants*