United States District Court
Southern District of Texas

**ENTERED**

June 12, 2023
Nathan Ochsner, Clerk

# In the United States District Court
# for the Southern District of Texas

## GALVESTON DIVISION

No. 3:22-cv-148

DIVISION 80 LLC, *PLAINTIFF*,

v.

MERRICK GARLAND, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The plaintiff and defendants have separately moved for summary judgment. Dkts. 87, 91. The court grants the defendants' motion and denies the plaintiff's motion.

## I.    Background

Division 80 is a Galveston County business that sells receiver[1] blanks for build-it-yourself firearms. Dkt. 1 ¶ 6. The following images from 27 C.F.R.

---

[1] The proper definition of a "receiver"—which is not defined in the Gun Control Act—is contested. But the parties do not dispute that the "receiver" is a component of a firearm that houses the bolt or breechblock or that a "receiver blank" is an unfinished receiver. *See* Dkts. 1 ¶¶ 27, 54; 99 at 9; *see also* 27 C.F.R. § 478.12.

§ 478.12 illustrate a complete receiver[2] on various common types of weapons:







---

[2] The parties dispute this provision's definition of *incomplete* receivers. But there is no dispute concerning these images illustrating *complete* receivers.

Last year, the Department of Justice's Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") published a final rule updating the definition of a "firearm" under the Gun Control Act, 18 U.S.C. § 921, to include some incomplete receivers: *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447, 478, and 479) [hereinafter "the Rule"]. In May 2022, Division 80 filed this suit seeking to enjoin and invalidate the Rule. Dkts. 1, 11. The defendants are agencies charged with implementing the Gun Control Act—the Department of Justice and ATF—and those agencies' top officials (collectively, "the agencies"). Dkt. 1 ¶¶ 7–10.

Division 80 lodges several statutory and constitutional claims against the agencies. *Id.* ¶¶ 105–149; Dkt. 87 at 18–20. Both Division 80 and the agencies have moved for summary judgment. Dkts. 87, 91. Because Division 80 lacks standing, the court does not reach the statutory or constitutional claims.

## II.   Legal Standard

### A. Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most

favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). For each cause of action moved on, the movant must set forth those elements for which it contends no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence," then the fact is undisputed. *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "Such undisputed facts may form the basis for summary judgment." *Id.* The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

**B. Standing**

Article III limits federal courts' jurisdiction to adjudicating "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception." *Keyes v. Gunn*, 890 F.3d 232, 235 (5th Cir. 2018) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). The party asserting jurisdiction bears the burden of proof. *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019).

To establish standing, a plaintiff must show "three basic elements: injury in fact, causation, and redressability." *Adams v. City of Harahan*, 65 F.4th 267, 271 (5th Cir. 2023) (citing *Lujan*, 504 U.S. at 560). "[E]ach element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements of that stage of litigation." *Inclusive Cmtys. Project, Inc.*, 946 F.3d at 655 (alteration in original) (quoting *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 (5th Cir. 2018), *as revised*

(Feb. 1, 2018), *cert. denied*, 139 S. Ct. 211 (2018)). "Thus, at summary judgment, [the plaintiff] can't rely on 'mere allegations'; it 'must set forth by affidavit or other evidence specific facts' supporting standing." *Inclusive Cmtys. Project, Inc.*, 946 F.3d at 655.

Injury in fact "must be 'concrete, particularized, and actual or imminent.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). To allege a particularized injury, the plaintiff must establish that it has a "personal stake" in the alleged dispute. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). The third-party standing doctrine generally prohibits a plaintiff from asserting claims based on a third party's rights. *White Glove Staffing, Inc. v. Methodist Hosps. of Dall.*, 947 F.3d 301, 308 (5th Cir. 2020) (quoting *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 80 (1978)).

Traceability requires a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 561. "[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party," proving standing is "substantially more difficult." *California v. Texas*, 141 S. Ct. 2104, 2117 (2021) (quoting *Lujan*, 504 U.S. at 562). "In such circumstances, the plaintiff must show 'that third parties will

likely react in predictable ways.'" *Daves v. Dallas County*, 22 F.4th 522, 543 (5th Cir. 2022).

Finally, redressability requires that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). Those requirements impose a significant burden on plaintiffs seeking to show standing to challenge a government action that does not directly affect them:

> When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, . . . causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, . . . and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.

*Inclusive Cmtys. Project, Inc.*, 946 F.3d at 655–56 (quoting *Lujan*, 504 U.S. at 562).

## III.  Analysis

In their motion for summary judgment, the agencies argue that Division 80 lacks standing and ask the court to dismiss the suit for lack of

subject-matter jurisdiction. Dkt. 91. Jurisdiction is a threshold issue; the court cannot reach the merits unless a justiciable case or controversy exists.

## A. The Agencies' Attack on Standing

The agencies argue that the court lacks subject-matter jurisdiction to resolve this case because Division 80 "has not carried its burden to establish that the products it allegedly sells are 'firearms' under the Rule." *Id.* at 27. Specifically, the agencies point out that Division's 80 broad assertion that it "distributes receiver blanks" does not mean that Division 80 sells "firearms" under the Rule. *Id.* (quoting Dkt. 1 ¶ 5).

The Rule does not cover all incomplete receivers. It extends to a receiver blank only if it is "designed to or may *readily be completed*, assembled, restored, or otherwise converted to function as a frame or receiver." 27 C.F.R. § 478.12(c) (emphasis added). For instance, "[a] billet or blank of an AR–15 variant receiver without critical interior areas having been indexed, machined, or formed that is not sold, distributed, or possessed with instructions, jigs, templates, equipment, or tools such that it may readily be completed is not a receiver." *Id.*

ATF issued guidance on September 27, 2022, which further illustrates the Rule's boundaries with images:





Andrew Graham & William Henderson, *Open Letter to All Federal Firearms Licensees, Impact of Final Rule 2021-05F on Partially Complete AR-15/M-16 Type Receivers*, U.S. Dep't of Just., Bureau of Alcohol, Tobacco, Firearms & Explosives 3–4 (Sept. 27, 2022), www.atf.gov/firearms/docs/open-letter/all-ffls-september-2022-impact-final-rule-2021-05f-partially-complete-ar/download.

According to the agencies, the evidence concerning Division 80's products indicates that the Rule does not reach—and thus does not injure—Division 80. *See* Dkt. 91 at 27 (quoting Dkt. 68 at 23) (discussing Division 80's representation at this case's preliminary-injunction hearing that "the actual product" Division 80 sells is an "incomplete AR receiver" that is *not* sold with any tool or jig that a buyer can use to "complete" the receiver).

## B. Division 80's Response

In response, Division 80 does not allege that the Rule covers the "actual product" it sells—or, in other words, that it has suffered a particularized injury. Instead, to establish injury it relies on evidence showing the conduct of or injury to third parties not before this court. That evidence does not carry Division 80's standing burden.

First, Division 80 points to evidence showing that the agencies anticipated that the Rule would reach two of Division 80's manufacturers. Dkt. 95 (quoting Dkt. 55-1 ¶ 7) ("The specific products sold by Division 80 so far since its founding have come from two manufacturers of frame and receiver blanks . . . identified by ATF in its Regulatory Impact Analysis and Final Regulatory Flexibility Analysis as sellers of 'partially complete' frames and receivers that the Final Rule will treat as regulated frames and receivers."). Taking this evidence in a light most favorable to Division 80, it

establishes only that *some* products its manufacturers supply are governed by the Rule's requirements. Division 80 does not allege that the Rule applies to the specific products it receives from the manufacturers; that the manufacturers produce and sell only the receiver Division 80 purchases; that it has been harmed because of its manufacturers' regulation; or even that the Rule has reached these manufacturers in its implementation. Thus, this evidence fails to show that Division 80 has suffered a particularized harm.

Similarly, Division 80 argues that "at least one payment[-]processing company cut off services *for the manufacturer* of Division 80's products as of August 24, 2022." Dkt. 95 at 12 (emphasis added); *see also* Dkt. 71. To support this, Division 80 offers a letter that a payment-processing company purportedly sent to one of Division 80's manufacturers a couple of weeks before the Rule took effect. *See* Dkt. 71-2 at 2 (not identifying the recipient). In the letter, the payment-processing company expresses its understanding that the Rule requires serial numbers for all "frames or receivers" and notifies a customer that it would not process payments "for the sale of gun parts and/or 'frames or receivers'" until the customer secured a federal license. *Id.* The claim that this letter later resulted in an unidentified manufacturer losing services, though possibly true, lacks evidentiary support. But even assuming the claim is true, it shows only that *a*

*manufacturer*, not necessarily Division 80's manufacturer and certainly not Division 80 itself, faced an imminent injury. Accordingly, this evidence also fails to carry Division 80's burden to show standing.[3]

Finally, Division 80 argues that the Rule injures it because its shipping vendor, FedEx, announced in August 2022 that it would no longer ship "items that may be completed, assembled, restored, or otherwise converted to function as a firearm frame or receiver." Dkt. 95 at 12. As characterized, this evidence would show that Division 80 suffered a particularized injury because it uses FedEx's services to ship its products, which are "items that may be completed, assembled, restored, or otherwise converted to function as a firearm frame or receiver."

But the evidence Division 80 cites does not comport with its characterization. Division 80 relies on a tweet purportedly quoting a "FedEx [s]pokesperson," which claims to announce the company's intent to stop shipping "*unserialized* frames and receivers or other items that may be completed, assembled, restored, or otherwise converted to function as a

---

[3] The payment-processing-company evidence also suffers from a redressability problem. There is no indication that the payment-processing company has correctly interpreted the Rule. Even assuming it has, Division 80 fails to show how the Rule would redress its harm, as opposed to the manufacturer's harm.

firearm frame or receiver per federal regulation." *See* Dkt. 95 at 5 (discussing Dkt. 71-1 at 2 n.1).

Even taking the tweet in a light most favorable to Division 80, it does not show that FedEx intended to, or did, stop shipping Division 80's products. As the agencies point out in their reply, the tweet "establishes nothing more than that *if* Division 80 had previously distributed products classified as firearms under the Rule, *then* it would be required to serialize them . . . to continue availing itself of FedEx shipping services." Dkt. 99 at 11.



Because Division 80 has offered no evidence that its products are firearms under the Rule, this argument also does not persuade the court that a case or controversy exists here.

Before concluding, the court notes that Division 80's standing should not be particularly difficult to establish given the procedural posture in this case. Since the court denied Division 80's request for a preliminary injunction last August, Division 80 has been subject to the Rule—to the extent it reaches the company. Though by no means an exclusive means to showing standing, "a distributor of products that are newly classified as firearms as a result of the Rule . . . would [presumedly] have evidence of costs that it incurred either to comply with the Rule or as a result of discontinuing particular lines of business." Dkt. 99 at 14. But Division 80 has not offered this or any other persuasive evidence to support its standing.

In sum, Division 80 has failed to meet its burden to show that it has suffered an injury caused by the Rule that this court can redress. Accordingly, the court grants the agencies summary judgment.

*     *     *

For the reasons explained above, the court grants the agencies' motion for summary judgment, Dkt. 91,[4] and denies Division 80's motion, Dkt. 87. All pending motions are denied as moot. Dkt. 80. The court will enter a separate final judgment.

Signed on Galveston Island this 12th day of June, 2023.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

---

[4] The agencies filed an unopposed motion to file excess pages in their reply. Dkt. 98. Before the court issued an order granting the motion, the agencies filed the reply. Because it was unopposed and in accordance with the court's general policy of allowing excess pages on the pleadings in this complex case, *see* Dkt. 90, the court grants the motion. Dkt. 98.

15/15